834 So.2d 1052 (2002)
David JOHNSON
v.
LOUISIANA CONTAINER COMPANY.
No. 02-382.
Court of Appeal of Louisiana, Third Circuit.
October 2, 2002.
Rehearing Denied November 13, 2002.
*1054 Bradley J. Gadel, Percy, Smith, Foote & Gadel, Alexandria, LA, for Defendant/Appellant Louisiana Container Company.
W. Jay Luneau, Alexandria, LA, for Plaintiff/Appellee David Johnson.
Court composed of ULYSSES GENE THIBODEAUX, JOHN D. SAUNDERS, and MARC T. AMY, Judges.
THIBODEAUX, Judge.
In this workers' compensation case, defendants, Louisiana Container Company (Louisiana Container) and Louisiana United Business Association Self Insurer's Fund (LUBA), appeal the judgment of the Office of Workers' Compensation in favor of plaintiff, David Johnson, arising out of an accident that occurred on December 27, 1998. The workers' compensation judge (WCJ) ruled that Mr. Johnson's back injury of 1999 aggravated the injury he received to his back from a 1997 slip and fall accident in a K Mart store. The WCJ also ruled that Mr. Johnson required back surgery and that his need for surgery was causally related to his on-the-job accident of December 27, 1998. The WCJ also awarded Mr. Johnson $2,000 in penalties and $7,500 in attorney fees because he found that the employer was unreasonable in failing to authorize back surgery. The WCJ also amended Mr. Johnson's compensation rate and awarded fringe benefits. Additionally, Mr. Johnson was awarded the amount of $2,000 in penalties and $3,500 in attorney fees because the WCJ found that Louisiana Container failed to reasonably controvert the issue of Mr. Johnson's compensation rate. Lastly, the WCJ found that Mr. Johnson was entitled to temporary total disability (TTD) benefits from the date of loss. The WCJ awarded Mr. Johnson an additional $2,000 in penalties and $4,000 in attorney fees for Louisiana Container's failure to pay Mr. Johnson TTD benefits.
Mr. Johnson answered Louisiana Container's appeal seeking an increase in the amount of attorney fees awarded by the WCJ or, in the alternative, an increase in the amount of attorney fees awarded for the work done in the present appeal.
*1055 For the following reasons, we affirm the WCJ's finding that Mr. Johnson's back injury as a result of his on-the-job accident aggravated a back injury Mr. Johnson suffered in another accident in 1997. In connection with this finding, we affirm the WCJ's ruling that the surgery recommended by Dr. Louis Blanda is related to Mr. Johnson's workers' compensation accident. We further affirm the WCJ's award of penalties and attorney fees to Mr. Johnson due to Louisiana Container's failure to reasonably controvert Mr. Johnson's need for surgery. We also affirm the WCJ's decision that Mr. Johnson was entitled to TTD benefits and the decision to award penalties and attorney fees. The WCJ did not err in increasing the amount of Mr. Johnson's compensation rate and awarding penalties and attorney fees based on Louisiana Container's actions with regard to Mr. Johnson's wage issue.

I.

ISSUES
Louisiana Container presents the following issues for review:
1) whether the trial court erred in ruling that the back surgery recommended by Dr. Louis Blanda is causally related to Mr. Johnson's workers' compensation accident of December 27, 1998;
2) whether the trial court erred in awarding Mr. Johnson $2,000 in penalties and $7,500 in attorney fees for Louisiana Container's failure to authorize Mr. Johnson's back surgery;
3) whether the trial court erred and abused its discretion in ignoring its own scheduling order and allowing prejudicial expansion of the issues on the morning of trial;
4) whether the trial court erred in ruling that Mr. Johnson was entitled to TTD benefits and awarding Mr. Johnson penalties and attorney fees for its failure to award TTD benefits; and,
5) whether the trial court erred in amending Mr. Johnson's compensation rate, decreeing that Mr. Johnson was entitled to a presumptive forty-hour work week and awarding fringe benefits as well as penalties and attorney fees for Louisiana Container's failure to reasonably controvert Mr. Johnson's compensation rate.

II.

FACTS
In July 1998, Mr. Johnson was hired to work as a welder for Louisiana Container. Mr. Johnson's duties as a welder for Louisiana Container included building floors for garbage containers. Building floors for garbage containers included loading a table by lifting sheets of metal by crane and putting them on the table. After putting the sheets on the table, Mr. Johnson and other Louisiana Container employees lined the sheets evenly on the table by hand.
When a Louisiana Container painter suddenly resigned his employment, Mr. Johnson stated to his immediate supervisor "I know how to run an airless paint gun." Mr. Johnson's immediate supervisor informed the shop foreman that Mr. Johnson could run an airless paint gun. Mr. Johnson was asked to fill in as a painter until they could hire another painter.
Just prior to working for Louisiana Container as a welder and then as a painter, Mr. Johnson was doing heavy construction work. Before doing this work, Mr. Johnson injured his lower back in 1997 when he slipped and fell in K Mart department store. Dr. M. Lawrence Drerup diagnosed *1056 a bulging disk. Mr. Johnson testified that he was able to go back to doing construction work without physical problems. Mr. Johnson further testified that Dr. Drerup discussed a microdiskectomy procedure as an option for relieving any pain in his back. Mr. Johnson opted not to have the back surgery performed because the exercises prescribed by his physical therapist alleviated the back pain.
When Mr. Johnson went to work for Louisiana Container, the heaviest thing he carried was the floor sheets as a welder and five gallon buckets of paint from the paint locker into the shop as a painter. Mr. Johnson testified that he was able to do those activities without a lot of pain. Mr. Johnson also testified that he had to undergo a physical examination prior to his employment with Louisiana Container. During his physical examination, Mr. Johnson's back was examined. The examination of his back consisted of bending over and touching his toes and twisting around. He was able to do the things requested. He was also told that he passed the physical examination.
With respect to his wages, Mr. Johnson testified that he was told he would be earning eight dollars and fifty cents per hour and that he in fact earned that amount of money. Mr. Johnson was also told about the company benefits such as group insurance for family coverage, accidental death and disability, life insurance and long and short-term disability. Mr. Johnson testified that he opted to take the health insurance for his family, half of which was paid by Louisiana Container. Mr. Johnson testified that with the exception of a few personal days off, he generally worked forty hours per week for Louisiana Container.
The parties stipulated that on December 7, 1998, Mr. Johnson was injured while in the course and scope of his employment with Louisiana Container. Following that injury, Mr. Johnson was taken home by a co-worker due to his extreme pain. Mr. Johnson sought medical treatment from several doctors. Mr. Johnson first saw the company doctor, Dr. Darian Slaughter the doctor who performed his physical for employment with Louisiana Container and whom he saw only once for that purpose. Dr. Slaughter referred Mr. Johnson to Dr. Drerup, an expert in the field of neurological surgery. Dr. Drerup sent Mr. Johnson to Dr. Stephen Katz, a specialist in pain management. Dr. Drerup told Mr. Johnson that Dr. Katz would administer three epidural steroid shots and that if the shots did not work, he would discuss other alternatives to alleviate his pain. Mr. Johnson saw Dr. Katz three times, with two week intervals between each visit, for administration of the epidural steroid shots. Mr. Johnson testified that he was to return to Dr. Katz one month after receiving the last shot but that LUBA would not pay for that visit.
Mr. Johnson's benefits were terminated on July 1, 1999, when settlement of his claim was discussed. Mr. Johnson testified that he discussed a settlement amount of $2,500. Mr. Johnson also testified that he was told by Ms. Lopushansky of LUBA that he could not go back to see Dr. Katz and that LUBA would not pay for a follow-up visit with Dr. Drerup. Additionally, Mr. Johnson was told that LUBA would pay for one refill of his pain medication. The settlement was never perfected. Thereafter, Mr. Johnson hired an attorney to represent him in his workers' compensation claim.
Mr. Johnson began treatment with Dr. Blanda on August 17, 1999, and continued treatment with Dr. Blanda until August 30, 2001. In all, Mr. Johnson saw Dr. Blanda ten times. Dr. Blanda recommended that Mr. Johnson undergo several tests and *1057 opined that back surgery would relieve about eighty-five percent of Mr. Johnson's pain. Dr. Blanda was of the opinion that Mr. Johnson aggravated his prior back injury of 1997. Mr. Johnson explained that he did not want surgery after his 1997 accident because his pain got better by just doing exercises, but that he now desired surgery because he has been in pain that has not been alleviated with conservative treatment since his work-related injury of 1998. An MRI taken on March 29, 2001, revealed that Mr. Johnson's back problems were worse than what previous MRIs revealed. Mr. Johnson further explained that he has problems related to his 1998 Louisiana Container-injury that he did not have after the 1997 accident such as "trouble walking ... have to drag [his] feet to walk ... legs go numb ... feet tingle ... have trouble holding [his] bladder... sleep on couch mostly because it hurts ... to sleep in the bed." Mr. Johnson further testified that prior to the 1998 accident, he never had trouble with his legs giving out. Dr. Blanda concluded that Mr. Johnson needed surgery.
Mr. Johnson's back was also evaluated by Dr. Stephen S. Nason, an orthopaedic surgeon, on September 13, 1999 at the request of Louisiana Container's workers' compensation insurer for an independent medical examination. Dr. Nason reviewed Mr. Johnson's medical records, including the MRI conducted after Mr. Johnson's 1997 accident, and an MRI conducted after Mr. Johnson's 1998 work-related accident and found no differences in the two MRIs. Dr. Nason found that Mr. Johnson suffered from bulging disks. Dr. Nason further opined that Mr. Johnson was not a candidate for surgery because surgery would not solve Mr. Johnson's back problems.
After his 1997 accident, Mr. Johnson saw Dr. Drerup, a neurological surgeon. He diagnosed Mr. Johnson as suffering from possible cervical radiculopathy, chronic low back pain with possible lumbar radiculopathy and left hip pathology. By Mr. Johnson's third visit with Dr. Drerup in January 1998, an MRI showed disk herniation at the L5 S1 level of Mr. Johnson's back. Dr. Drerup discussed Mr. Johnson's treatment options including the option of disksectomy and fusion surgery. Dr. Drerup testified that disk herniation will not heal on its own and the treatment option a patient chooses is based on the patient's level of pain.
Ultimately, Mr. Johnson chose not to undergo surgery and testified that his pain had subsided. He did not see Dr. Drerup again until February 23, 1999, after the occurrence of his work-related accident of December 1998. Dr. Drerup opined that Mr. Johnson had gone into remission from the 1997 accident and that a subsequent accident caused his back problems to return. Like Dr. Blanda, Dr. Drerup recommended that Mr. Johnson have surgery to relieve his pain.
Louisiana Container, through LUBA, initiated the payment of compensation benefits soon after Mr. Johnson's accident based on the amount Louisiana Container paid Mr. Johnson per hour which was $8.50. Mr. Johnson's average weekly wage rate, used to calculate the amount of workers' compensation benefits he was to be paid, did not include an amount for fringe benefits. Mr. Sanford Arst, an adjuster with LUBA who handled Mr. Johnson's claim for workers' compensation benefits on behalf of Louisiana Container, testified that in determining Mr. Johnson's average weekly wage rate information regarding Mr. Johnson's full or part time employee status was not taken into account. Workers' compensation benefits paid from December 1998, were changed from temporary total disability benefits *1058 (TTD) to supplemental earnings benefits (SEB) in June 1999. Thereafter, in July 1999, when settlement talks begun, Mr. Johnson's workers' compensation benefits were terminated. The settlement was not approved by the WCJ and on July 14, 1999, Mr. Johnson filed a 1008 Disputed Claim for Compensation against Louisiana Container alleging the failure of Louisiana Container to provide the correct rate of indemnity benefits, failure to provide indemnity benefits, and failure to provide medical benefits. Following a one day hearing on the merits of the case, the WCJ took the matter under advisement. On December 21, 2001, the WCJ found in favor of Mr. Johnson on all issues and awarded penalties and attorney fees. This appeal by Louisiana Container followed.

III.

STANDARD OF REVIEW
The standard of review in a workers' compensation hearing was set out in Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, pp. 7-8 (La.7/1/97); 696 So.2d 551, 556 as follows:
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of review. Smith v. Louisiana Dep't of Corrections, 93-1305, p. 4 (La.2/28/94), 633 So.2d 129, 132; Freeman v. Poulon/Weed Eater, 93-1530, pp. 4-5 (La.1/14/94), 630 So.2d 733, 737-38. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Freeman, 93-1530 at p. 5, 630 So.2d at 737-38; Stobart v. State, 617 So.2d 880, 882 (La.1993); Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 882. Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La. 1990).

IV.

LAW AND DISCUSSION
Need for Surgery in Connection with the December 1998 Accident:
Louisiana Container argues that the WCJ erred by finding that the back surgery recommended by Dr. Blanda is causally related to Mr. Johnson's work-related accident of December 27, 1998. Louisiana Container claims that this ruling was in error because Mr. Johnson injured his back in 1997 and back surgery was recommended for that injury by Dr. Drerup. Further, Louisiana Container asserts that based on the testimony of Drs. Blanda and Dr. Nason, the MRI taken prior to the 1998 accident and the one taken after the accident were virtually identical.
Dr. Nason testified that Mr. Johnson suffered from bulging disks; however, in the first MRI the radiologist, Dr. Carl Schofield, found that the disks at the L5-S1 and L4-5 area of Mr. Johnson's back were herniated. Dr. Blanda agreed with the radiologist's assessment of the MRI taken after the 1997 accident. Dr. Nason further testified that he would not recommend surgery because surgery would not solve a bulging disk problem. Dr. Nason admitted that Mr. Johnson's subjective complaints of pain was consistent with the MRI findings. Dr. Nason wrote a letter to *1059 Mr. Buster Fontenot, a vocational rehabilitation consultant, where he stated that he did not feel Mr. Johnson could return to full duties and that Mr. Johnson would have limitations and restrictions on his physical capabilities. Dr. Nason also noted that Mr. Johnson would have to undergo a functional capacity evaluation (FCE) in order to determine his exact limitations. Dr. Nason also felt that Mr. Johnson would be unable to do light-duty carpentry, sheet rock hanging or painting. Thus, Dr. Nason agreed that Mr. Johnson suffered with back problems and was in pain. Dr. Nason disagreed that Mr. Johnson's problems were associated with his work-related accident of December 1998.
Dr. Blanda's first examination of Mr. Johnson in August 1999, revealed a spasm in Mr. Johnson's lower back. Dr. Blanda explained that the spasm is an objective sign of pain because it is an involuntary muscle contraction that comes about in response to pain. Dr. Blanda further explained that the spasm is the body's way of limiting movement of the painful area. Dr. Blanda reviewed the MRI dated February 2, 1999, that said Mr. Johnson had both degenerative changes in his disks at the L4-5 and L5-S1 levels of his back as well as signs of herniation in those areas. Dr. Blanda recommended that Mr. Johnson undergo a myelogram, a CT scan and an EMG test. Dr. Blanda testified that he needed those tests because Mr. Johnson showed symptoms of having two abnormal disks. Dr. Blanda also testified that further testing can narrow down the symptoms to reveal that the problems are with only one disk. Moreover, Dr. Blanda testified that a Myelogram can help to further identify where a nerve is being compressed. With respect to performing a CT scan, Dr. Blanda testified that a CT scan makes a diagnosis more definitive by revealing a cross sectional view of a patient's back structure. None of the tests ordered by Dr. Blanda were approved by LUBA.
Ultimately, by March 8, 2001, with Mr. Johnson complaining of increasing pain and additional problems with bladder control, Dr. Blanda requested, and LUBA approved, another MRI test. Mr. Johnson had the MRI performed on April 5, 2001. Dr. Blanda testified that the MRI revealed that Mr. Johnson's condition was worse. The radiologist report accompanying the MRI revealed that the smaller disk at the L5-S1 level of Mr. Johnson's back was a large, left-sided herniation. Dr. Blanda testified that the April 2001 MRI confirmed that Mr. Johnson's condition was getting worse. Dr. Blanda opined that Mr. Johnson needed surgery.
The WCJ found that Mr. Johnson began working for Louisiana Container after his 1997 accident and that he performed heavy physical labor. The WCJ further found that Mr. Johnson was able to do the work required of him at Louisiana Container without complaints of pain or problems until Mr. Johnson's December 7, 1998, work-related accident. A 1999 MRI ordered by Dr. Drerup after the December 1998 accident, revealed "mild radiculopathy secondary to disk pathology at L4-5." The WCJ noted that the 1999 MRI showed problems with Mr. Johnson's back in an area not revealed on the 1998 MRI taken subsequent to Mr. Johnson's 1997 accident.
Mr. Johnson saw Dr. Slaughter for epidural steroid injections to alleviate his pain. Dr. Slaughter did not release Mr. Johnson to go back to work and opined that Mr. Johnson needed a follow-up appointment with Dr. Drerup to determine if he was a candidate for surgery. Dr. Slaughter noted that physical therapy had not helped. Dr. Nason admitted in his recommendation to LUBA that Mr. Johnson's most recent injury perhaps aggravated *1060 his pre-existing condition. Dr. Nason thought it inadvisable for Mr. Johnson to return to a job involving frequent bending and lifting. Dr. Nason also advised that these restrictions were permanent. Dr. Nason did not rule out a myelogram, or an EMG; he merely testified that those tests should be done if Mr. Johnson was a candidate for surgery.
An MRI taken in March 2001 that revealed the smaller disk problem at the L5-S1 level was now a large left-sided herniation. The WCJ found that although the employer knew of the information revealed in the March 2001 MRI, Louisiana Container failed to redepose Drs. Nason or Drerup. All of the doctors agreed that Mr. Johnson's injury in December 1998 was an aggravation of his pre-existing back problem of 1997. The law is settled that a preexisting disease or infirmity of the employee does not disqualify the workers' compensation claim if the work injury aggravated, accelerated or combined with the disease or infirmity to produce the disability for which compensation is claimed. Robinson v. Travelers Ins. Co., 619 So.2d 1261 (La.App. 3 Cir.1993).
Ultimately, the WCJ concluded that Mr. Johnson's need for surgery was related to his work-related accident of December 7, 1998. We find no error in this finding. Mr. Johnson was injured in a slip and fall accident in 1997. He was seen by several doctors. Dr. Drerup presented the option of surgical treatment for his back problems as well as conservative treatment consisting of physical therapy and steroid injections. Mr. Johnson chose the latter option. Conservative treatment was successful and Mr. Johnson remained pain free, engaging in heavy labor type work until his accident of December 7, 1998. All of Mr. Johnson's MRIs revealed disk herniation as opposed to mere bulging. Dr. Blanda, Mr. Johnson's treating physician, testified that surgery is necessary to alleviate pain due to herniated disks. This assignment of error is without merit.
Penalties and Attorney FeesFailure to Authorize Medical Tests and Surgery
Louisiana Container asserts that the WCJ erred in awarding penalties and attorney fees for its failure to authorize Mr. Johnson's back surgery and diagnostic tests associated with performing the surgery. The law governing the refusal to authorize medical treatments arises from La.R.S. 23:1201 and 23:1203. Louisiana Revised Statutes 23:1203(A) states in pertinent part:
In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services.
Louisiana Revised Statutes 23:1201(E) requires that "[m]edical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof." Subsection (F) further states that failure to comply with this Section "shall result in the assessment of a penalty ... together with reasonable attorney fees for each disputed claim."
The decision to impose penalties is a factual question, which will not be disturbed on appeal in the absence of manifest error. Spencer v. Gaylord Container Corp., 96-1230 (La.App. 1 Cir. 3/27/97); 693 So.2d 818. Louisiana courts have consistently held that failure to authorize a medical procedure for an employee eligible to receive workers' compensation is *1061 deemed to be a failure to furnish compensation benefits, thereby triggering the penalty provisions of the Louisiana Workers' Compensation Act. Gay v. Georgia Pacific Corp., 32,653 (La.App. 2 Cir. 12/22/99); 754 So.2d 1101. Penalties and attorney fees shall be awarded if the employer or the insurer fails to timely pay benefits due claimant, unless the claim is reasonably controverted or such nonpayment results from conditions over which the employer or insurer had no control. La.R.S. 23:1201(F); Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/01/98); 721 So.2d 885. The supreme court in Brown went on to state that:
[I]n order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.
Brown, 721 So.2d at 890.
The WCJ held that Louisiana Container failed to reasonably controvert Mr. Johnson's claim for medical testing and surgery. There is nothing in the record to suggest that this finding is manifestly erroneous. Therefore, the award of penalties and attorney fees is affirmed as against Louisiana Container.
WCJ Scheduling Order and WCJ's Expansion of Issues at Trial
Louisiana Container asserts that at trial, the WCJ improperly expanded the issues as presented in Mr. Johnson's petition and as determined at a pretrial conference to include the issue of Mr. Johnson's fringe benefits. Louisiana Container further asserts that the WCJ improperly allowed Mr. Johnson to file an untimely pretrial statement and pretrial memorandum in violation of the WCJ's previously set pretrial schedule.
Louisiana Code Civil Procedure Article 1551 provides as follows with respect to pretrial and scheduling conference orders:
A. In any civil action in a district court the court may in its discretion direct the attorneys for the parties to appear before it for conferences to consider any of the following:
(1) The simplification of the issues, including the elimination of frivolous claims or defenses.
(2) The necessity of desirability of amendments to the pleadings.
(3) What material facts and issues exist without substantial controversy, and what material facts and issues are actually and in good faith controverted.
(4) Proof, stipulations regarding the authenticity of documents, and advance rulings from the court on the admissibility of evidence.
(5) Limitations or restrictions on or regulation of the use of expert testimony under Louisiana Code of Evidence Article 702.
(6) The control and scheduling of discovery.
(7) The identification of witnesses, documents, and exhibits.
(8) Such other matters as may aid in the disposition of the action.
B. The court shall render an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters *1062 considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel. Such order controls the subsequent course of the action, unless modified at trial to prevent manifest injustice.
C. If a party's attorney fails to obey a pretrial order, or to appear at the pretrial and scheduling conference, or is substantially unprepared to participate in the conference or fails to participate in good faith, the court, on its own motion or on the motion of a party, after hearing, may make such orders as are just, including orders provided in Article 1471(2), (3), and (4). In lieu of or in addition to any other sanction, the court may require the party or the attorney representing the party or both to pay the reasonable expenses incurred by noncompliance with this Paragraph, including attorney fees.
The WCJ's scheduling order stated that pretrial statements were due thirty days prior to trial. The order also stated that failure to submit documentary evidence prior to trial "shall result in its exclusion." There is no corresponding consequence in the order with respect to the failure to submit pretrial statements timely. Trial in this matter was held on November 6, 2001. Louisiana Container submitted its pretrial statement on June 4, 2001, well within the time limit set by the scheduling order. Mr. Johnson submitted his pretrial statement on November 1, 2001, well outside of the time limit set by the scheduling order, but prior to trial. The WCJ allowed the submission of Mr. Johnson's pretrial statement.
Louisiana Code Civil Procedure Article 1551(B) gives the trial court discretion to modify a pretrial order if modification will prevent manifest injustice. Apparently, the WCJ determined that to disallow Mr. Johnson's submission of his pretrial statement before trial but after the time limit set by his pretrial order would cause manifest injustice. We find no abuse in the WCJ's exercise of his discretion.
In connection with Mr. Johnson's submission of his pretrial statement, Louisiana Container asserts that the WCJ improperly expanded the issues to be litigated at trial. Specifically, Louisiana Container asserts that issues regarding Mr. Johnson's wage rates should be disallowed. However, it is within the trial court's discretion to admit or disallow evidence subject to an objection based upon the scope of the issues and pleadings. Brannon v. Boe, 569 So.2d 1086 (La.App. 3 Cir.1990). Furthermore, it is within the trial court's discretion to determine whether evidence is encompassed by the general issues raised in the pleadings. Id. In his answer to Louisiana Container's interrogatories regarding his wages, Mr. Johnson stated that his "indemnity benefits from December 1998 to July 1999 were figured incorrectly." Louisiana Container contends that Mr. Johnson's wage rate calculation dispute should be limited to the aforementioned time period. The WCJ noted that Mr. Johnson's 1008 form raised an issue of the "correct calculation of Mr. Johnson's average weekly wage, stated that he was a full-time employee, that he had some benefits, fringe benefits, may be entitled to, used in calculation of his average weekly wage." The WCJ also concluded that Mr. Johnson's demand against Louisiana Container for failure to approve surgery encompassed Mr. Johnson's disability status with respect to whether he was temporary totally disabled or whether at any time his status was appropriately changed to supplemental earnings benefit status. We agree with the WCJ. Evidence of Mr. Johnson's need for diagnostic medical tests and surgery is relevant to the question of whether he should receive TTD benefits or *1063 SEB. This was one of the issues raised in his pleadings. Further, whether Louisiana Container provided Mr. Johnson fringe benefits is relevant to the issue of the proper calculation of his wage rate, another issue raised by the pleadings. We find no abuse of the WCJ's decision to include evidence of the type and amount of fringe benefits Mr. Johnson received as an employee of Louisiana Container, nor do we find abuse of the WCJ's discretion with respect to allowing evidence of Mr. Johnson's disability status. Thus, this assignment of error is without merit.
Temporary Total Disability Benefits, Supplemental Earnings Benefits
Louisiana Container asserts that Mr. Johnson was not entitled to TTD benefits from the date of his work-related accident on December 7, 1998 to the present. Louisiana Container argues that Mr. Johnson worked several months after his on-the-job injury and submitted Form 1020 indicating the amount of wages he earned; therefore, Louisiana Container was not in error when in July 1999 it converted Mr. Johnson's benefits from TTD to SEBs. On the other hand, Mr. Johnson asserts that his TTD benefits should not have been switched to SEB; and that he was totally temporarily disabled from the time he was injured in December of 1998 to the present.
The benefits to which a particular claimant is entitled are clearly determined by the application of La.R.S. 23:1221. When a statute is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit. La.R.S. 1:4. "The law is to be applied as written and no further interpretation may be made in search of the intent of the legislature." Thibodeaux v. Stapp Towing Co., Inc., 96-1514 (La.App. 3 Cir. 8/27/97); 702 So.2d 693. Louisiana Revised Statutes 23:1221(1)(a) states that a person who is temporarily totally disabled is entitled to TTDs and La.R.S. 23:1221(1)(b) states that a person who works at all is not entitled to TTDs; whereas, La.R.S. 23:1221(3)(a) provides for SEBs equal to the difference between the average monthly wages at the time of injury and average monthly wages earned or average monthly wages the employee is able to earn and that a claimant must be capable of working in order to be eligible for SEBs. We conclude, therefore, that a person who is temporarily totally disabled and not able to work is entitled to TTD benefits. Thus, the issue is whether Mr. Johnson was temporarily totally disabled and unable to work when his TTD benefits were converted to SEBs.
The WCJ gave the following reasons for finding that Mr. Johnson's benefits should not have been converted from TTD to SEB:
The court finds that because Doctor Slaughter in July of 1999 stated that Mr. Johnson was not at maximum medical improvement, needed to follow up to see if he was a surgical candidate, needed work hardening physical therapy, needed an FCE, that a-a need for an FCE was confirmed by Doctor Nason in September of 1999. [sic] The continuing medical treatment of Doctor Blanda which disabled Mr. Johnson, that the employer unreasonably failed to pay Mr. Johnson temporary total disability benefits as opposed to SEB benefits.
Louisiana Container supports its conversion of Mr. Johnson's TTD benefits to SEBs by pointing to the fact that Mr. Johnson worked for "Carpet Care," a business owned by Mr. Johnson's father-in-law. Mr. Johnson testified that he worked for his father-in-law because during the time that he was out of work, his father-in-law helped him pay bills, paid his rent, bought his groceries and gave him cash.
*1064 Mr. Johnson further testified that his father-in-law "created" a job for him in his carpet business. Mr. Johnson testified that his job at Carpet Care involved riding with a carpet technician, talking to the customer while the technician cleaned the carpet and collecting the money from the customer. Mr. Johnson also plugged and unplugged the carpet cleaning machines. Mr. Johnson did report his income from this job to the workers' compensation carrier. Mr. Johnson described his work for Carpet Care as "justdoing something to have something to do." It appears from the record that Mr. Johnson's father-in-law allowed Mr. Johnson to work for Carpet Care so that he could give Mr. Johnson money from his business account as opposed to his personal account. Mr. Johnson testified that he stopped working for Carpet Care because at the end of the day he was in pain. At the time of the hearing, Mr. Johnson was not engaged in any type of work.
Although Mr. Johnson's father-in-law benevolently hired Mr. Johnson to work in his carpet cleaning business, the record reflects that Mr. Johnson was unable to continue even the light duty work to which he was assigned. The medical evidence corroborates Mr. Johnson's allegation that he is unable to engage in any type of work. Thus, we find no error in the WCJ's ruling that Mr. Johnson's benefits should not have been converted to SEBs and that he is entitled to receive TTD benefits from the date of his injury to the present.
Louisiana Container also contests the WCJ's award of penalties and attorney fees. Louisiana Revised Statutes 23:1201(B) and (F)(2) provides for the assessment of penalties and attorney fees for the failure to timely pay all compensation that is then due, unless the claim is reasonably controverted. In Brown, 721 So.2d at 890, the supreme court defined "reasonably controverted as follows:
[I]n order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits.... [A] court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.
The WCJ further ruled that the medical evidence revealed that Mr. Johnson was not at maximum medical improvement. The WCJ further noted that even Dr. Nason, a doctor Mr. Johnson saw at the request of Louisiana Container, concluded that an FCE was necessary before he would release Mr. Johnson to work, and that if Mr. Johnson was a candidate for surgery, further medical testing would be necessary. Drs. Blanda and Slaughter concluded that Mr. Johnson was a candidate for surgery. For these reasons, the WCJ found that Louisiana Container improperly converted Mr. Johnson's TTD benefits to SEBs because it did not have a valid reason for the conversion based on the medical evidence. Therefore, the WCJ awarded Mr. Johnson penalties and attorney fees. We find no error in the WCJ's decision.
Calculation of Wages; Fringe Benefits
Louisiana Container asserts that the value of the fringe benefits it provided to Mr. Johnson should not be considered part of his wages, and that Mr. Johnson was not entitled to a presumptive forty-hour work week. We disagree.
With respect to fringe benefits, Louisiana Container relies upon La.R.S. *1065 23:1021(10)(f) that provides as follows with respect to income tax:
In the determination of "wages" and the average weekly wage at the time of the accident, no amount shall be included for any benefit or form of compensation which is not taxable to an employee for federal income tax purposes; however, any amount withheld by the employer to fund any non-taxable or tax deferred benefit provided by the employer and which was elected by the employee in lieu of taxable earnings shall be included in the calculation of the employee's wage and average weekly wage.
Louisiana Container admits that it did not include the value of the fringe benefits in calculating Mr. Johnson's average weekly wage rate. Act 751 of 1999, effective on August 15, 1999, amended La.R.S. 23:1021(10)(f) and precluded the value of Mr. Johnson's fringe benefits after August 15, 1999. We disagree.
The value of fringe benefits, if proven, will be included in the calculation of weekly wages for the purpose of determining the compensation rate if such benefits were fairly contemplated by the parties to the contract of employment. Transportation Ins. Co. v. Pool, 30,250, 30,253, 30,252, 30,251 (La.App. 2 Cir. 5/13/98); 714 So.2d 153, writ denied, 98-1566, 98-1616 (La.9/25/98); 725 So.2d 486, 488. We recognize that La.R.S. 23:1021 was amended by Acts 1999, No. 751 to add subparagraph 10(f), concerning the exclusion of nontaxable benefits from the determination of average weekly wages. However, since claimant was injured in 1998, this section is not applicable to the present case. See Moses v. Grambling State University, 33,185 (La.App. 2 Cir. 5/15/00); 762 So.2d 191, writ denied, 00-1769 (La.9/22/00); 768 So.2d 1285. In Burge v. Louisiana Ins. Guaranty Ass'n., 02-33, p. 3 (La.App. 3 Cir. 5/15/02); 819 So.2d 1098, 1100 we stated, "[i]t is well settled in workers' compensation cases that generally the law governing an action for benefits is the law that was in effect at the time of the injury." We further quoted from Skipper v. Acadian Oaks Hospital, 00-67, p. 4 (La.App. 3 Cir. 5/3/00); 762 So.2d 122, 124-25 the following:
We have reviewed the workers' compensation jurisprudence of the supreme court and found that beginning with Boyer v. Crescent Paper Box Factory, 143 La. 368, 78 So. 596 (La.1917), the cases in which the supreme court has held that "[t]he law applicable in a worker's compensation case is the one in effect at the time of the injury" have been cases where the issue was an employee's entitlement to benefits or the amount of benefits an employee was entitled to receive. See Craver v. Gillespie, 148 La. 182, 86 So. 730 (La.1920); Leon v. Crowell & Spencer Lumber Co., 151 La. 932, 92 So. 389 (La.1922); Nelson v. Roadway Express, Inc., 588 So.2d 350 (La.1991); Bruno v. Harbert Int'l, Inc., 593 So.2d 357 (La.1992); Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94); 630 So.2d 733; Coates v. Byrd Constr. Serv., Inc., 94-2989 (La.2/9/95); 650 So.2d 237; Daugherty v. Domino's Pizza, 95-1394 (La.5/21/96); 674 So.2d 947; Chevalier v. L.H. Bossier, Inc., 95-2075 (La.7/2/96); 676 So.2d 1072.
Louisiana Revised Statutes 23:1021(10)(f) addresses the amount of benefits an employee is entitled to receive. Hence, its version at the time Mr. Johnson sustained his injury must be applied. The 1998 version of La.R.S. 23:1021 did not provide for the exclusion of the value of fringe benefits when calculating an employee's average weekly wage rate. The trial court found that the weekly value for Mr. Johnson's health insurance was *1066 $39.84; the weekly value for Mr. Johnson's family health insurance coverage was $39.47; the weekly value of Mr. Johnson's short-term disability coverage was $2.19; the weekly value of Mr. Johnson's long-term disability coverage was $2.19; and the weekly value of Mr. Johnson's life insurance coverage was $1.71. For the above reasons, these fringe benefit values should have been made a part of Louisiana Container's calculation of Mr. Johnson's average week wage rate.
Further, in determining Mr. Johnson's average weekly wage rate, the WCJ gave Mr. Johnson the benefit of a presumptive forty-hour work week. Louisiana Container asserts that this was error. Louisiana Container does not dispute Mr. Johnson's full-time employment status. In fact, Mr. Cecil Holden, the vice-president in charge of finance for Louisiana Container, testified that they hired Mr. Holden as a full-time employee. Louisiana Container argues, however, that he did not work a full forty-hour week because Mr. Johnson was absent from work when work was available and that these absences were discretionary. Mr. Johnson admits that in the four full weeks prior to his injury, he worked less than forty hours a week due to illness and car problems. Louisiana Revised Statutes 23:1021(10)(a) with respect to hourly wages provides in pertinent part as follows:
(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater; or
(ii) If the employee is paid on an hourly basis and the employee was offered employment for forty hours or more but regularly, and at his own discretion, works less than forty hours per week for whatever reason, then, the average of his total earnings per week for the four full weeks preceding the date of the accident;
There being no issue regarding Mr. Johnson's full time employment status, it appears that the WCJ based his opinion on La.R.S. 23:1021(10)(a)(i) when he gave Mr. Johnson the benefit of the presumption that he worked forty hours per week, the greater of the actual number of hours Mr. Johnson worked. A full time employee is entitled to the forty-hour per week presumption. See Leger v. A-1 Nursing Registry, 98-1731 (La.App. 3 Cir. 4/28/99); 737 So.2d 142, writ denied, 99-1555 (La.9/24/99); 749 So.2d 633.
However, Louisiana Container's argument seems to be based on La.R.S. 23:1021(10)(a)(ii) where it notes that Mr. Johnson was absent from work for personal reasons and actually worked less than forty hours per week due to his absences. Louisiana Container does not dispute that Mr. Johnson's absences for illness and car problems and the repair of his car were excused absences. Further, Louisiana Container admits that Mr. Johnson made up the missed time. Finally, although Mr. Johnson worked less than forty hours in the four weeks preceding the accident due to his illness as well as the need to repair his transportation, we do not find that there is sufficient evidence to show that Mr. Johnson "regularly and at his own discretion, worked less than 40 hours per week", as envisioned by the statute. See Price v. Fireman's Fund Ins. Co., 502 So.2d 1078 (La.1987). Consequently, we find that the wage rate should have been calculated as provided for in La.R.S. 23:1021(10)(a)(i). Thus, the WCJ did not err in using the forty hour presumption in calculating Mr. Johnson's weekly wage rate at $340.00. Therefore, the WCJ calculated Mr. Johnson's total average weekly wage rate (average weekly wage based on *1067 forty hours per week at $8.50 per hour plus the value of the fringe benefits) at $425.15 and held that his corresponding workers' compensation benefit rate should be $283.58.
In connection with Louisiana Container's failure to properly calculate and pay Mr. Johnson TTD benefits, the WCJ awarded penalties in the amount of $2,000 and attorney fees in the amount of $3,500. In accordance with the law at the time of Mr. Johnson's injury, we have already determined that Mr. Johnson was entitled to have the value of his fringe benefits included in the calculation of his average weekly wage rate. Mr. Arst of LUBA admitted that in calculating Mr. Johnson's weekly wage rate, he did not include the value of the fringe benefits even though the law at the time of Mr. Johnson's injury required that he do so. It appears that Louisiana Container deliberately chose to remain ignorant of law with respect to the valuation of fringe benefits in the calculation of an injured worker's wage rate, and ignored the mandate of La.R.S. 23:1021(10)(a)(i) as well as the jurisprudence interpreting that provision. Thus, it did not reasonably controvert Mr. Johnson's claim that his fringe benefits be included in a determination of his average weekly wage because it relied on a 1999 amendment to La.R.S. 23:1021(10)(f) that is inapplicable to Mr. Johnson. Furthermore, Louisiana Container failed to reasonably controvert the applicability of the forty hour work week presumption. Therefore, we find that the WCJ's award of penalties and attorney fees in this instance was not in error.
Request for Increase in Attorney Fees for Work on Appeal
In his answer to Louisiana Container's appeal, Mr. Johnson requests an increase in attorney fees awarded for work done defending the present appeal. In Sinegal v. Able Glass Co., Inc., 95-10, p. 5 (La.App. 3 Cir. 10/11/95); 663 So.2d 393, 396, we stated:
An increase in attorney's fees is awarded on appeal when the defendant appeals, obtains no relief, and the appeal has necessitated more work on the part of the plaintiff's attorney, provided that the plaintiff requests such an increase. Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736 (La.App. 1 Cir.), writ denied, 553 So.2d 466 (La. 1989).
In the present case, a review of the additional work necessitated by this appeal reveals that an award of $3,000 in attorney fees is warranted. See Poirrier v. Otis Engineering Corp., 602 So.2d 207 (La.App. 3 Cir.1992).

V.

CONCLUSION
For the foregoing reasons, the judgment of the Office of Workers' Compensation is affirmed. We award plaintiff, David Johnson, $3,000 in attorney fees for all work performed on appeal. Costs of this appeal are assessed against Louisiana Container Company.
AFFIRMED.