|, PICKETT, Judge.

FACTS

Kenneth R. Short sustained an injury to his left knee on July 27, 2000, while in the course and scope of his employment with Allen Johnson Builders, Inc. Immediately following the accident, Mr. Short was seen by Dr. C. Darien Slaughter, a general practitioner, who recommended therapy and anti-inflammatory medication. When Mr. Short experienced no relief, an MRI was performed, which revealed a tear of the medial meniscus. Dr. Slaughter referred him to Dr. Terry Texada, an orthopedic surgeon. Dr. Texada performed an arthroscopic procedure on Mr. Short’s left knee on September 27, 2000. Mr. Short continued to experience pain in his left knee, and Dr. Texada recommended that Mr. Short undergo a total knee replacement. Mr. Short sought a second medical opinion from Dr. Lee Leonard, an orthopedist. Dr. Leonard examined the claimant on January 15, 2001, and thereafter issued a report wherein he agreed that Mr. Short needed total knee replacement. After receiving Dr. Leonard’s report, Dr. Texada scheduled the knee replacement surgery. Gary Williams, the claims adjuster for Louisiana United Businesses Association Self-Insurers Fund (LUBA), the employer’s insurer, canceled the surgery, however, and sought a third medical opinion from Dr. John P. Sweeney.
Dr. Sweeney, an orthopedic surgeon, examined the claimant on March 7, 2001. Dr. Sweeney disagreed with Dr. Texada’s and Dr. Leonard’s recommendations. He believed Mr. Short’s condition was primarily related to his underlying degenerative knee arthritis. He did not feel a total knee replacement was appropriate, but instead recommended conservative treatment consisting of non-steroidal anti-inflammatory medications and limitations on long-distance walking, climbing and other athletic activities. He further noted that the claimant was at maximum medical improvement | ¿without a ratable impairment to his knee related to the July 27, 2000 job injury. Although the employer paid Mr. Short’s medical expenses and indemnity benefits, it chose not to authorize knee replacement surgery based on Dr. Sweeney’s medical opinion. Allegedly, the employer did not receive Dr. Leonard’s report, which agreed with Dr. Texada’s recommendations for surgery, until after Dr. Sweeney’s report was rendered.
On May 2, 2001, the employer requested an independent medical examination (IME) on Mr. Short. The Office of Workers’ Compensation appointed Dr. Vanda Davidson, an orthopaedic surgeon, to perform the IME. Following an examination of the claimant and a review of Drs. Slaughter’s, Texada’s, and Sweeney’s records, Dr. Davidson issued a report on July 9, 2001, wherein he agreed with Dr. Texa-da’s recommendation for total knee replacement surgery. On August 16, 2001, the employer authorized the surgery. Mr. Short had total knee replacement surgery on September 26, 2001.
*693 Mr. Short had been receiving temporary total disability benefits at a rate of $884.00 per week. Subsequently, his disability benefits were converted to supplemental earnings benefits (SEBs). In April, 2002, Dr. Texada rendered a report concerning Mr. Short’s condition wherein he reported that the claimant was at maximum medical improvement and could return to limited-duty work with some temporary physical restrictions. The claimant met with Buster Fontenot, a vocational rehabilitation counselor, and discussed with him his ability to return to work. He also talked to the defendant employer. The employer was aware the claimant had relocated to Butte Larose following the accident. The defendant-employer advised Mr. Short it had a job available for him in Alexandria at his regular hours and rate of I -¡pay with the modified duties approved by his treating surgeon. The position was available on May 15, 2002. When Mr. Short did not accept the position, his SEBs were terminated effective that date. Mr. Short ultimately acquired employment on his own in his geographical area.
Mr. Short brought a claim against his employer on several issues, including the failure to timely authorize knee replacement surgery and for penalties and attorney fees. The workers’ compensation judge held the following: 1) the claimant’s entitlement to SEBs ended on May 15, 2002; 2) the claimant was awarded penalties in the amount of $4,000.00 for nonpayment and untimely payment of indemnity benefits; 3) attorney fees were awarded in the amount of $6,000.00; and 4) the defendant was ordered to pay the claimant’s indemnity benefits for August 24, 2000, in the amount of $54.86. The workers’ compensation judge denied Mr. Short’s claim for penalties and attorney fees for the employer’s delay in authorizing knee surgery. It is from this judgment that the claimant appeals.

ASSIGNMENTS OF ERROR

The claimant sets forth three assignments of error:
1) Because the basic, outcome-determinative facts were not disputed, did the hearing officer err, as a matter of law, in terminating SEB[s]?
2) Because the basic, outcome-determinative facts were not disputed, did the hearing officer err, as a matter of law, in refusing to award indemnity benefits for August 12 and 13,2000?
3) Because the basic, outcome-determinative facts were not disputed, did the hearing officer err, as a matter of law, in concluding that defendant’s delay in authorizing total knee replacement surgery until August 16, 2001 was reasonable?

\ ¿DISCUSSION

In his first assignment of error, the claimant contends the workers’ compensation judge erred in terminating his supplemental earnings benefits. The workers’ compensation judge ruled that the claimant’s SEBs were terminated effective May 15, 2002, the day a position was made available to him with his former employer at his regular hours and rate of pay with the modified duties that were approved by his treating physician.
The claimant argues that the defendant-employer failed to prove that a reasonable job position was offered to him within his own reasonable geographic region that would pay more than ninety (90%) percent of his pre-accident wages. The appellee argues the appellant failed to bear the initial burden of proving that he is unable to earn at least ninety (90%) percent of his pre-accident wages.
La.R.S. 23:1221(3)(a) provides, in part:
*694 For injury resulting in the employee’s inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds per cent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis.
In Banks v. Industrial Roofing & Sheet Metal Works, Inc. 96-2840, pp. 8-9 (La.7/1/97), 696 So.2d 551, 556, the supreme court stated as follows:
“The purpose of SEBs is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident.” Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52, 55 (La.1993). An employee is entitled to receive supplemental earnings benefits (SEBs) Rif he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. “Th[is] analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers’ compensation law is to be liberally construed in favor of coverage.” Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La.1989).
Once the employee’s burden is met, the burden shifts to the employer who, in order to defeat the employee’s claim for SEBs or establish the employee’s earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer’s community or reasonable geographic region. Actual job placement is not required. The amount of SEBs is based upon the difference between the claimant’s pre-injury average monthly wage and the claimant’s proven post-injury monthly earning capacity.
(Other citations omitted.)
“[T]he manifest error standard of appellate review applies in workers’ compensation eases and great deference is accorded to the [workers’ compensation judge’s] factual findings and reasonable evaluations of credibility.” Garner v. Sheats & Frazier, 95-39, p. 7 (La.App. 3 Cir. 7/5/95); 663 So.2d 57, 61. The workers’ compensation judge found there was no evidence that the claimant could not earn ninety percent (90%) of his pre-injury wages. The record supports this finding, and it cannot, therefore, be disturbed. We therefore find the claimant failed to meet his initial burden of proving, by a preponderance of the evidence, that the injury to his knee resulted in his inability to earn ninety percent of his pre-injury wages after May 15, 2002. We find no error in the workers’ compensation judge’s termination of those benefits effective that date.
In his second assignment of error, the claimant argues that the workers’ | (¡compensation judge erred, as a matter of law, in refusing to award indemnity benefits for August 12 and 13, 2000. Relative *695 to the issue of indemnity benefits, the workers’ compensation judge noted as follows:
I have no testimony about whether or not Mr. Short was scheduled to work on Saturday or Sundays, whether he worked five, six or seven days a week. It would appear that the first day of disability from being able to work occurred on Monday, August the 14th.
So I would conclude that there’s been the-the nonpayment of one day of temporary total disability, that day being August the 14th of 2000 and that Mr. Short is due a two thousand dollar penalty for-he’s due that amount of money. I haven’t figured up what that may be, but he’s due ... that amount and a two thousand dollar penalty on that amount.
As noted above, findings of fact by the workers’ compensation judge are subject to the manifest error standard of review. We find no error in the workers’ compensation judge’s finding that no benefits were due for August 12 and 18, 2000.
In his final assignment of error, the claimant asserts that the workers’ compensation judge erred, as a matter of law, in concluding that the appellee’s delay in authorizing total knee replacement surgery until August 16, 2001, was reasonable.
In the instant case, the claimant was injured on July 27, 2000. An arthroscopic procedure was performed on his left knee on September 27, 2000, from which he received no relief. Dr. Texada subsequently recommended a total knee replacement. The claimant chose to seek a second medical opinion and was examined by Dr. Leonard on January 15, 2001. Dr. Leonard agreed with Dr. Texada’s recommendation for surgery and issued a report on January 22, 2001, which reflected that opinion. Surgery was scheduled, but the LUBA claims adjustor canceled the surgery and requested that the claimant be examined by Dr. Sweeney. Dr. Sweeney saw the claimant on March 7, 2001. He disagreed with Dr. Texada’s ^recommendation for surgery. The Office of Workers’ Compensation appointed Dr. Davidson to perform an IME pursuant to a request made by the appellee on May 2, 2001. In his report, which was rendered on July 9, 2001, Dr. Davidson agreed that a total knee replacement was necessary. The defendant authorized the claimant’s knee replacement surgery on August 16, 2001, a little more than five weeks after the IME report was issued.
The workers’ compensation judge found that “the employer did not arbitrarily and capriciously deny Mr. Short a surgery for total knee replacement.” We disagree. Although the employer might be considered justified in not authorizing surgery when presented with conflicting medical opinions from Dr. Texada and Dr. Sweeney, the employer was aware that the claimant had been seen by Dr. Leonard and took no steps to secure his report in any timely fashion. Although Dr. Sweeney saw the claimant on March 7, 2001, the employer did not request an IME until May 2, 2001. Upon receipt of the IME report, at which time the employer had before it three separate medical opinions which recommended total knee replacement surgery, the employer still did not authorize the surgery for over five weeks. We find this delay unreasonable under the facts and circumstances. The employer failed to reasonably controvert the claim, and the claimant is entitled to penalties and attorney fees. We hereby award penalties in the amount of $2,000.00 and attorney fees in the amount of $5,000.00

DECREE

We affirm the decision of the workers’ compensation judge terminating supple *696 mental earnings benefits and his finding that no indemnity benefits were due for August 12 and 18, 2000. We reverse the ruling of the workers’ compensation | judge on the knee replacement issue and find that the appellee failed to reasonably controvert the appellant’s claim for surgery. We award penalties of $2,000.00 and attorney fees of $5,000.00. Costs of this appeal are to be borne by the appellee, Allen Johnson Builders, Inc.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
PETERS, J., concurs in part and dissents in part, and assigns written reasons.
AMY, J., concurs and assigns written reasons.