PAMELA METOYER

VERSUS

ROY O. MARTIN, INC.

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - District 2
PARISH OF RAPIDES, NO. 01-04930
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**********

**BILLIE COLOMBARO WOODARD**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, John D. Saunders, Billie Colombaro Woodard, Marc T. Amy and Michael G. Sullivan, Judges.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

**Saunders, J., dissents and assigns written reasons.**

John Fayne Wilkes  III
Borne & Wilkes, L.L.P.
Post Office Box 4305
Lafayette, Louisiana 70502-4305
(337) 232-1604
Counsel for: Defendant/Appellant
        Roy O. Martin Lumber Co., Inc.

George Arthur Flournoy
Flournoy, Doggett & Losavio
Post Office Box 1270
Alexandria, Louisiana 71309-1270
(318) 487-9858
Counsel for: Plaintiff/Appellee
        Pamela A. Metoyer

**Woodard, Judge.**

Employer, Roy O. Martin, Inc., managing partner of Martco Partnership (collectively Martco), appeals a workers' compensation judgment in favor of its employee, Pamela Metoyer, awarding multiple attorney fees and penalties for violations of La.R.S. 23:1201.

\* \* \* \* \*

On December 3, 1998, while in the course and scope of her employment with Roy O. Martin, Inc., Metoyer slipped while putting gas in a forklift and injured her back and right leg. Dr. Geoffrey Collins diagnosed her with back injuries, for which she, ultimately, had surgery; namely, a right L5 hemilaminectomy and L4/5 diskectomy. Ms. Metoyer filed a 1008 disputed claim for compensation on January 22, 1999. Judgment on that claim is final and is not before us.

Shortly after her surgery, Ms. Metoyer moved to Florida to care for her minor sister. She continued her treatment in Florida with Dr. Dana Philip Richard, Dr. Harvey Montijo, an orthopedist, and pain specialists, Drs. Gulati and Williamson. Ms. Metoyer obtained seasonal employment with UPS during December of 1999 and worked for SYSCO Foods (SYSCO) from January of 2000 until it terminated her in August of 2001. She filed an additional 1008 disputed claim for compensation against Martco on July 11, 2001, which is the subject matter of the present litigation. At Martco's request, she underwent an independent medical evaluation by Dr. Jeffrey Penner.

The WCJ ruled that Ms. Metoyer is entitled to supplemental earnings benefits (SEB) payments based on zero earnings from November 12, 1999 until the beginning of her employment with UPS; SEB payments in accordance with La.R.S. 23:1221(3) during the time UPS and SYSCO employed her; SEB payments based on zero earnings beginning August 8, 2001; medical treatment by a urologist and psychiatrist of her choice; certain medication charges; $20,300.00 in penalties for untimely and incorrect payments of indemnity benefits, multiple failures to timely authorize medical treatment, and failure to timely provide vocational rehabilitation; $41,500.00 in attorney fees; and finally, all costs of court. The WCJ denied Martco's La.R.S. 23:1208 claims. Martco appeals, asserting several assignments of error. Metoyer answers the appeal and alleges two assignments of error.

STANDARD OF REVIEW

We apply the manifest error standard of review to factual determinations in workers' compensation cases.[1] Only if we find that the trial court committed an error of law that interdicted the factfinding process will we conduct a *de novo* review.[2]

FORFEITURE OF BENEFITS

Martco alleges that the WCJ committed an error of law in reaching the decision that Ms. Metoyer's actions did not require the forfeiture of her benefits under La.R.S. 23:1208.

Louisiana Revised Statute 23:1208 provides, in pertinent part:

> A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
>
> . . . .
>
> E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

Martco claims that the WCJ's finding that, although Ms. Metoyer lied to Social Security, she did not lie to Martco, and, therefore, La.R.S. 23:1208 was inapplicable, is a clear error of law; thus, we must review this matter under the *de novo* standard of review.

However, our reading of the WCJ's reasons for judgment does not support Martco's interpretation. The WCJ specifically held that the "information on the social security records is incorrect and the information on the short term disability forms *may* be incorrect." The WCJ held that whether the statements were correct or incorrect, they were likely inadvertent, and, in any case, were not made for the express purpose of obtaining workers' compensation benefits.

---

[1] *Smith v. La. Dep't of Corrs.*, 93-1305 (La. 2/28/94), 633 So.2d 129.

[2] *Campo v. Correa*, 01-2707 (La. 6/21/02), 828 So.2d 502.

Furthermore, in addressing Martco's claim that Metoyer violated La.R.S. 23:1208 and, therefore, forfeited all rights to compensation, the WCJ cited the supreme court case of *Resweber v. Haroil Construction Co.*[3] and identified the three elements needed to establish the forfeiture of benefits under La.R.S. 23:1208; namely, a false statement or representation, willfully made, and made for the purpose of obtaining or defeating a benefit or payment. The *Resweber* court specifically stated that the statute does not require forfeiture of benefits for *any* false statement. For example, forfeiture is not required when the false statement is inconsequential to the present claim or not willfully made for the purpose of obtaining workers' compensation benefits.

We find the WCJ correctly understood the applicable law regarding La.R.S. 23:1208 and the forfeiture of workers' compensation benefits. There is nothing in the WCJ's reasons for judgment to indicate an incorrect application of the law. Therefore, his decisions are subject to a manifest error standard of review.

Martco contends that Ms. Metoyer failed to disclose her employment with UPS; failed to disclose a job injury at SYSCO; made misrepresentations in claims for social security benefits; failed to disclose an April 18, 2001 automobile accident; failed to disclose that she had seen Dr. James; failed to inform them of a prior workers' compensation claim from 1992; failed to disclose an automobile accident which occurred in 1995; and violated 23:1208 in her response to interrogatories about any other legal actions or claims she may have made.

The WCJ systematically addressed each of Martco's allegations of Ms. Metoyer's false statements. As for her failure to disclose her employment with UPS, the WCJ found that she had disclosed her employment with SYSCO and gave authorization to Martco to obtain her employment records from them, knowing that the records would disclose her employment with UPS. Additionally, her UPS employment lasted only three to four weeks during the holiday season. The WCJ also noted that, at the time of this employment, Martco had already converted her claim, from TTD to SEB, based on a basis of a ten dollar and seventy-five cent per hour job for a forty hour work week. As her employment at UPS was short term and paid her only eight dollars and fifty cents an hour, the WCJ found the temporary employment with UPS was inconsequential and did not affect her receipt of benefits. Therefore,

---

[3] 94-2708 (La. 9/5/95), 660 So.2d 7.

any statement or omission of her employment at UPS in Ms. Metoyer's deposition was inconsequential and had no bearing on her receipt of SEB benefits from Martco.

Next, the WCJ addressed Martco's allegations that Ms. Metoyer failed to disclose that her duties at SYSCO routinely involved heavy lifting of seventy to one hundred pounds. The WCJ found that a thorough review of SYSCO's employment records reveal that, although she began as a shift supervisor working in the warehouse, she subsequently changed positions which reduced the amount of manual labor required and eventually her job duties consisted exclusively of clerical skills and computer work. The records show that she maintained this clerical position for over a year, corroborating her testimony.

Martco also argues that Ms. Metoyer failed to disclose an automobile accident which occurred on April 18, 2001. The WCJ noted, however, that the hospital records from that matter indicate that her only injury was a fractured sternum. There was no re-injury or aggravation of her preexisting back injury at all. Therefore, this omission was inconsequential.

The WCJ next addresses Martco's allegation that Ms. Metoyer failed to disclose a prior workers' compensation claim from 1992. The claim form from that incident indicates that she fell over a stool and injured her left lower leg. The WCJ noted that the record from that injury reflects no injury to her back or right leg; therefore, it has no impact on her claimed injuries from the Martco accident. Further, he observed that she freely discussed this prior claim in her testimony. He found this information immaterial to her current claim for workers' compensation benefits, and, therefore, any alleged failure to address it previously was inconsequential.

Martco also alleges that Ms. Metoyer failed to disclose a complaint of back pain following an automobile accident in 1995. The WCJ found it significant, however, that the records of the doctor, she saw following that accident, indicate that she saw the doctor on only one occasion. Therefore, that injury does not appear to be related to her current back problems. The WCJ supported his ruling with cases in which this court held that failure to disclose a prior back injury, which was not related to spinal disks, was inadvertent and inconsequential to a subsequent workers' compensation claim for spinal injury.[4]

---

[4]*See Greenhill Nursing Home v. Ferguson*, 01-459 (La.App. 3 Cir. 10/3/01), 796 So.2d 881, *writ denied*, 01-2976 (La. 1/25/02), 807 So.2d 843; *Fusilier v.*

Martco also claims that Ms. Metoyer suffered an on-the-job injury at SYSCO. It bases this allegation on the fact that she filed a short term disability claim form, following her termination, in which she indicates that she suffered an injury. Martco argues that this form indicates that the injury occurred at SYSCO. However, on the form, she indicated that she had suffered from a back injury and that she had previously lost work time for this injury. She also admitted on it that she was currently receiving workers' compensation benefits. The WCJ found that all of the information contained on the form was, in fact, true but that the form, itself, was very confusing, and it was unclear whether she was claiming compensation for a back injury actually sustained during her employment with SYSCO or for her prior workplace injury at Martco. SYSCO's employment records are clear, however, that there is no report of an on-the-job injury sustained during her employment. Therefore, the WCJ found no false statement.

Finally, the WCJ addresses the social security records she prepared after she left SYSCO. The social security form indicates that her job duties at SYSCO included heavy lifting of cases of food from seventy to one hundred pounds. As previously noted, her original position with SYSCO was in the warehouse and did involve some heavy lifting. She testified that she was unable to continue this level of activity due to her prior back injury, and within a matter of weeks her position changed and became fully clerical in nature. SYSCO's employment records corroborate this. The WCJ held that, even if there were misstatements in Ms. Metoyer's claim for social security or her claim for short term disability, such misstatements or misinformation were not offered for the specific purpose of obtaining workers' compensation benefits.

We cannot find manifest error in the WCJ's determinations regarding these alleged false statements. Additionally, despite Martco's allegations to the contrary, our review of the record and trial transcript reveals no bias, on the WCJ's part against Martco during the course of this litigation.

**SEB RATE**

Martco argues that the WCJ did not establish a proper SEB rate. "The purpose of SEBs is to compensate the injured employee for the wage earning capacity he has

_____

*Kaough & Associates*, 00-1750 (La.App. 3 Cir. 5/2/01), 784 So.2d 830.

lost as a result of his accident."[5]  Thus, the SEB rate is the difference between the claimant's average monthly wage before the injury and her monthly earning capacity after the injury.[6]  The employer has the burden of proving any post-injury earning capacity.[7]  The employer can meet this burden by showing that the employee is physically able to perform a certain job and that the job was offered or available to the employee in her or the employer's community or reasonable geographic region.[8]

Martco contends that the two positions Ms. Metoyer held in Florida, as well as a position Martco offered her in September 1999, prove job availability.  However, the WCJ found that the position Martco offered did not fit within the work restrictions Ms. Metoyer's physicians prescribed.  As to the jobs she held in Florida, her UPS employment was temporary in nature and insufficient to establish job availability which would discharge Martco's SEB obligation.  While the position at SYSCO was a full time position, SYSCO terminated Ms. Metoyer because the injury she suffered at Martco prevented her from continuing in a warehouse position.  Thus, Martco has not sufficiently discharged its burden of proving job availability.


FELONY CONVICTION

Martco claims that the WCJ committed manifest error by failing to admit evidence of a felony conviction against Ms. Metoyer while she was living in Florida. The conviction involved a domestic incident with her husband.  The WCJ found that any domestic issues were irrelevant to this workers' compensation matter.

We find no manifest error in the WCJ's refusal to admit evidence of the conviction.  Such evidence, even if admitted, would not reduce or remove Martco's obligation to provide Ms. Metoyer workers' compensation benefits.


FAILURE TO AUTHORIZE MEDICAL TREATMENT

---

[5]*Pinkins v. Cardinal Wholesale Supply, Inc.*, 619 So.2d 52, 55 (La.1993).

[6]*Short v. Allen Johnson Builders, Inc.*, 02-1454 (La.App. 3 Cir. 5/14/03), 847 So.2d 690, *writs denied*, 03-1743, 04-1750 (La. 10/10/03), 855 So.2d 344.

[7]*Id.*

[8]*Id.*

Martco contends that its failure to timely pay Ms. Metoyer's medical benefits does not subject it to penalties or attorney fees, as these claims were reasonably controverted. The WCJ awarded penalties and attorney fees for an unjustified delay in authorization for the following: treatment by a physician after Ms. Metoyer moved to Florida; treatment by an orthopedic surgeon and for an EMG following Dr. Richard's recommendation; and physical therapy following Dr. Montijo's recommendation. The WCJ also awarded penalties and attorney fees for Martco's failure to authorize the following: treatment by a urologist following Dr. Gulati's recommendation, as Dr. Collins records also supported the need for a urologist; treatment by a psychologist following Dr. Montijo's recommendation, as Dr. Richard's and Dr. James' records supported this recommendation; and failure to provide adequate vocation rehabilitation.

At least one physician, and in some instances two or three, supported each suggested treatment. Thus, we find no manifest error in the WCJ's determination that Martco failed to reasonably controvert the need for these treatments.

**INDEMNITY BENEFITS**

Additionally, the WCJ awarded penalties and attorney fees for the following indemnity benefit payments: late or insufficient payments for January 4, 1999 to January 10, 1999 and for June 26, 1999 to July 2, 1999; reducing Ms. Metoyer's benefits based upon the job Martco offered her; and taking credits on her SEB payments in August 2001 after SYSCO terminated her, based on the position Martco had offered her in November 1999.

Martco asserts that the trial court erred in awarding penalties and attorney fees concerning indemnity benefit payments because Ms. Metoyer's disputed claim form only asked for relief for Martco's failure to authorize medical treatments. However, the July 11, 2001 disputed claim form clearly indicates that in the category of bona-fide dispute Ms. Metoyer indicated not only failure to authorize medical treatment but also "other," which specifically includes non-payment or incorrect payment of indemnity benefits. In addition to the disputed claim form, Ms. Metoyer's pre-trial statement unequivocally includes non-payment or incorrect payment of disability benefits in her list of issues to be litigated. Furthermore, Martco's own pretrial

7

statement acknowledges that litigation of these compensation benefits may be an issue.

Accordingly, we proceed with a review of each award. We agree with the WCJ's penalty awards for reduction of SEB's and for SEB credits Martco took in August 2001, as the job Martco offered Ms. Metoyer did not comply with the work restrictions Dr. Collins placed on her. However, we must reverse the penalty and attorney fees awarded for Martco's payments for the periods in January, June, and July of 1999, as we find merit in Martco's exception of *res judicata*.

**EXCEPTION OF RES JUDICATA**

Martco filed a Peremptory Exception of Res Judicata in this court concerning the WCJ's awards for incorrect and untimely payments in January, June, and July of 1999. Ms. Metoyer filed her first 1008 Disputed Claim for Compensation on January 22, 1999. The WCJ heard the matter on August 9, 1999. Thus, Martco urges that the August 1999 judgment bars her claims in the instant suit related to payments made in the January, June, and July 1999. We must agree.

Louisiana Revised Statute 23:1201(F) states, in pertinent part:

> An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties *may be* imposed under this Section *which precedes the date of the hearing*.

(Emphasis added.)

Likewise, La.R.S. 1201(J) provides, in pertinent part:

[A]n award of such single attorney fee shall be res judicata as to *any and all conduct* for which penalties may be imposed under this Section *which precedes the date of the hearing*.

(Emphasis added.)

The January, June and July 1999 payments were claims which arose from conduct that preceded the August 9, 1999 hearing. Thus, La.R.S. 23:1201(F) and (J) preclude Ms. Metoyer from collecting penalties or attorney fees for those incorrect payments.

We recognize that the legislature added the relevant part of La.R.S. 23:1201(F) and La.R.S. 23:1201(J) in 2003. However, we apply them to the instant case because laws which merely clarify the meaning of a statute are interpretive and may apply retroactively.[9] The nature of workers' compensation proceedings require the WCJ to retain jurisdiction in order to continuously assess the employee's condition. Furthermore, because the WCJ's adjudication imposes an ongoing obligation on the employer, it retains jurisdiction to address continuous violations. Thus, these unique aspects of workers' compensation create confusion as to *res judicata*'s application in workers' compensation proceedings.

However, notwithstanding the amendments, La.Code Civ.P. art. 425(A) requires a litigant to bring all claims simultaneously, if they arise out of a single transaction or occurrence. If the litigant fails to bring all such claims, *res judicata* precludes her from bringing them in a subsequent suit.[10] Therefore, even though the WCJ has jurisdiction to adjudicate the employer's *ongoing* violations, a violation that could have been raised in a prior proceeding, but was not, may not be raised in a future proceeding because it is barred by *res judicata*. Instead, all violations that occurred and could have been raised in a prior proceeding are subsumed in that judgment, whether raised or not. Neither Article 425 nor the *res judicata* rule provides an exemption for workers' compensation judgments.

The relevant amendments simply clarify that Article 425 and the *res judicata* rules apply to workers' compensation proceedings in the same manner they apply to all others. Therefore, they are interpretive.

Thus, the August 1999 hearing precludes any claims for Martco's conduct prior to that hearing. Accordingly, we reverse the award of penalties and attorney fees for Martco's payments for the specified periods in January, June, and July of 1999.

**MULTIPLE ATTORNEY FEES**

Louisiana Revised Statute 23:1201(J) states, in pertinent part:

---

[9]*Huddleston v. Farmers-Merchants Bank & Trust Co.*, 00-640 (La.App. 3 Cir. 11/02/00), 772 So.2d 356.

[10]*Williams v. City of Marksville*, 02-1130 (La.App. 3 Cir. 3/5/03), 839 So.2d 1129.

9

> Notwithstanding the fact that more than one violation in this Section which provides for an award of attorney fees may be applicable, *only one reasonable attorney fee may be awarded* against the employer or insurer in connection with any hearing on the merits of any disputed claim filed pursuant to this Section.

(Emphasis added.)

In the instant case, the WCJ awarded a separate amount of attorney fees for each violation necessitating a penalty. However, La.R.S. 23:1201(J) dictates that only one reasonable attorney fee be awarded, *notwithstanding* that more than one violation is applicable.

Again, the legislature did not enact La.R.S. 23:1201(J) until 2003. However, it is interpretative and may apply retroactively. By allowing for the imposition of attorney fees, the legislature did not intend to abandon the jurisprudential factors that are traditionally considered in the amount of attorney fees awarded.

Specifically, our supreme court has already determined that it is the imposition of attorney fees, itself, not the amount, that serves to penalize the employer.[11] Accordingly, factors such as the employer's bad faith and the level of egregiousness of its actions may not be taken into account when setting attorney fees.[12] To impose an award of attorney fees along with each violation is an improper method which ignores the supreme court's directive. Namely, this method automatically increases the amount of attorney fees awarded in direct proportion to the number of violations. The ultimate result is to penalize the employer with the amount of fees rather than recognizing the imposition as the penalty.

Therefore, attorney fees should still be calculated using factors such as: the degree of skill and work involved in the case, the amount of the claim, the amount recovered, and the amount of time devoted to the case.[13] Thus, the legislature merely codified existing jurisprudence in La.R.S. 23:1201(J). Furthermore, a judge needs evidence of the above in order to properly assess and assign a fee.

---

[11]*Langely v. Petro Star Corp. of La.*, 01-198 (La. 6/29/01), 792 So.2d 721.

[12]*Id.*

[13]*Id.*

10

We reverse the WCJ's award of $41,500.00 in attorney fees, remand to the trial court, and order it to consider evidence concerning these traditional jurisprudential factors in setting the amount of attorney fees.

## COURT COSTS

In its final assignment of error, Martco argues that the WCJ erred in assessing all costs of the trial against it and urges us to reverse the judgment and cast costs against Ms. Metoyer. Because we have found no merit in most of Martco's assignments of error, we find no abuse of discretion in the trial court's decision to assess the trial costs against Martco.

## MOTION FOR NEW TRIAL

Martco appeals the trial court's denial of its motion for a new trial. A new trial is warranted when the judgment appears clearly contrary to the law and evidence.[14] We have reversed those portions of the judgment contrary to the law. In all other respects, we find no abuse of discretion in the trial court's judgment. Nor does a review of the record lead us to conclude that the trial court's denial of this motion resulted in a miscarriage of justice.

## MS. METOYER'S ASSIGNMENTS OF ERROR

Ms. Metoyer claims that the WCJ erred in denying her penalties and attorney fees for Martco's failure to reimburse her for medication expenses from Eckerd's pharmacy. However, she failed to provide proof that she actually paid for the medications in question. Thus, we find no error in the trial court's refusal to award reimbursement.

She also requests an increase in the amount of attorney fees the WCJ awarded as well as additional attorney fees for handling this matter on appeal. Our decision to reverse the award of attorney fees and remand this matter pretermits a review of the amount of attorney fees the WCJ awarded. We grant $3,500.00 for the work done on appeal.

## CONCLUSION

---

[14]La.Code Civ.P. art. 1972.

We reverse the $2,300.00 award of penalties for Martco's late or inadequate payments of benefits for periods in January, June, and July of 1999. We reverse the trial court's award of attorney fees, remand the matter and direct the trial court to calculate the amount of attorney fees in accordance with our opinion. In all other respects, we affirm the trial court's judgment. We grant Ms. Metoyer $3,500.00 in attorney fees for the work done on appeal, and assess all costs of the appeal to Martco.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

PAMELA METOYER

VERSUS

ROY O. MARTIN, INC.

On appeal from the Office of Workers' Compensation - #2, parish of Rapides, No. 01-04930, James L. Braddock, Workers' Compensation Judge, presiding.

SAUNDERS, J., dissents and assigns written reasons.

I respectfully dissent. The conduct cited by the workers' compensation judge as grounds for multiple attorney fees awards occurred before the enactment of La.R.S. 23:1201(J) in 2003. In reversing the workers' compensation judge, the majority concludes that this enactment is "interpretative" and should be applied retroactively. I disagree.

In examining the distinguishing characteristics of substantive, procedural, and interpretative laws the supreme court has held that:

> substantive laws are laws that impose new duties, obligations or responsibilities upon parties, or laws that **establish new rules, rights and duties or change existing ones**; procedural laws are those which prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws; and interpretative laws are those which clarify the meaning of a statute and are deemed to relate back to the time that the law was originally enacted. [Emphasis added].

*Sawicki v. K/S Stavanger Prince*, 01-0528, p. 8 (La. 12/7/01), 802 So.2d 598, 603-04. Before La.R.S. 23:1201(J) was enacted, claimants had the right to receive an award of attorney fees for every instance in which an employer violated the statute. This right was extinguished when La.R.S. 23:1201(J) was enacted; therefore, that enactment is substantive because an existing right was changed. Because I believe this enactment is substantive and substantive enactments apply prospectively, the law as it existed at the time of Martco's violations should apply. *Skipper v. Acadian Oaks Hosp.*, 00-67 (La.App. 3 Cir. 5/3/00), 762 So.2d 122.

Multiple awards of attorney fees were allowable when this dispute arose.

Accordingly, I do not believe the workers' compensation judge erred in ordering multiple awards for attorney fees based upon multiple violations of La.R.S. 23:1201 by Martco. Furthermore, I believe the workers' compensation judge's award of attorney fees was not an abuse of discretion. The workers compensation noted the sheer volume of documentary evidence presented in this matter and the large number of issues raised as the basis for the award. Additionally, the representation of Ms. Metoyer was undoubtedly made more burdensome by the fact that she resided in another state from the time the claim was filed until the hearing nearly two years later. Because of Mr. Flournoy's experience in workers' compensation matters and the time required by the many complex issues presented here, I believe the award of attorney fees was reasonable.