895 So.2d 552 (2005)
Pamela METOYER
v.
ROY O. MARTIN, INC.
No. 03-1540.
Court of Appeal of Louisiana, Third Circuit.
December 1, 2004.
Opinion Granting Rehearing March 23, 2005.
*554 John Fayne Wilkes III, Borne & Wilkes, L.L.P., Lafayette, LA, for Defendant/Appellant, Roy O. Martin Lumber Co., Inc.
*555 George Arthur Flournoy, Flournoy, Doggett & Losavio, Alexandria, LA, for Plaintiff/Appellee, Pamela A. Metoyer.
Court composed of SYLVIA R. COOKS, JOHN D. SAUNDERS, BILLIE COLOMBARO WOODARD, MARC T. AMY and MICHAEL G. SULLIVAN, Judges.
WOODARD, Judge.
Employer, Roy O. Martin, Inc., managing partner of Martco Partnership (collectively Martco), appeals a workers' compensation judgment in favor of its employee, Pamela Metoyer, awarding multiple attorney fees and penalties for violations of La.R.S. 23:1201.

* * * * *
On December 3, 1998, while in the course and scope of her employment with Roy O. Martin, Inc., Metoyer slipped while putting gas in a forklift and injured her back and right leg. Dr. Geoffrey Collins diagnosed her with back injuries, for which she, ultimately, had surgery; namely, a right L5 hemilaminectomy and L4/5 diskectomy. Ms. Metoyer filed a 1008 disputed claim for compensation on January 22, 1999. Judgment on that claim is final and is not before us.
Shortly after her surgery, Ms. Metoyer moved to Florida to care for her minor sister. She continued her treatment in Florida with Dr. Dana Philip Richard, Dr. Harvey Montijo, an orthopedist, and pain specialists, Drs. Gulati and Williamson. Ms. Metoyer obtained seasonal employment with UPS during December of 1999 and worked for SYSCO Foods (SYSCO) from January of 2000 until it terminated her in August of 2001. She filed an additional 1008 disputed claim for compensation against Martco on July 11, 2001, which is the subject matter of the present litigation. At Martco's request, she underwent an independent medical evaluation by Dr. Jeffrey Penner.
The WCJ ruled that Ms. Metoyer is entitled to supplemental earnings benefits (SEB) payments based on zero earnings from November 12, 1999 until the beginning of her employment with UPS; SEB payments in accordance with La.R.S. 23:1221(3) during the time UPS and SYSCO employed her; SEB payments based on zero earnings beginning August 8, 2001; medical treatment by a urologist and psychiatrist of her choice; certain medication charges; $20,300.00 in penalties for untimely and incorrect payments of indemnity benefits, multiple failures to timely authorize medical treatment, and failure to timely provide vocational rehabilitation; $41,500.00 in attorney fees; and finally, all costs of court. The WCJ denied Martco's La.R.S. 23:1208 claims. Martco appeals, asserting several assignments of error. Metoyer answers the appeal and alleges two assignments of error.

* * * * *

STANDARD OF REVIEW
We apply the manifest error standard of review to factual determinations in workers' compensation cases.[1] Only if we find that the trial court committed an error of law that interdicted the factfinding process will we conduct a de novo review.[2]

FORFEITURE OF BENEFITS
Martco alleges that the WCJ committed an error of law in reaching the decision that Ms. Metoyer's actions did not require *556 the forfeiture of her benefits under La.R.S. 23:1208.
Louisiana Revised Statute 23:1208 provides, in pertinent part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
....
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
Martco claims that the WCJ's finding that, although Ms. Metoyer lied to Social Security, she did not lie to Martco, and, therefore, La.R.S. 23:1208 was inapplicable, is a clear error of law; thus, we must review this matter under the de novo standard of review.
However, our reading of the WCJ's reasons for judgment does not support Martco's interpretation. The WCJ specifically held that the "information on the social security records is incorrect and the information on the short term disability forms may be incorrect." The WCJ held that whether the statements were correct or incorrect, they were likely inadvertent, and, in any case, were not made for the express purpose of obtaining workers' compensation benefits.
Furthermore, in addressing Martco's claim that Metoyer violated La.R.S. 23:1208 and, therefore, forfeited all rights to compensation, the WCJ cited the supreme court case of Resweber v. Haroil Construction Co.[3] and identified the three elements needed to establish the forfeiture of benefits under La.R.S. 23:1208; namely, a false statement or representation, willfully made, and made for the purpose of obtaining or defeating a benefit or payment. The Resweber court specifically stated that the statute does not require forfeiture of benefits for any false statement. For example, forfeiture is not required when the false statement is inconsequential to the present claim or not willfully made for the purpose of obtaining workers' compensation benefits.
We find the WCJ correctly understood the applicable law regarding La.R.S. 23:1208 and the forfeiture of workers' compensation benefits. There is nothing in the WCJ's reasons for judgment to indicate an incorrect application of the law. Therefore, his decisions are subject to a manifest error standard of review.
Martco contends that Ms. Metoyer failed to disclose her employment with UPS; failed to disclose a job injury at SYSCO; made misrepresentations in claims for social security benefits; failed to disclose an April 18, 2001 automobile accident; failed to disclose that she had seen Dr. James; failed to inform them of a prior workers' compensation claim from 1992; failed to disclose an automobile accident which occurred in 1995; and violated 23:1208 in her response to interrogatories about any other legal actions or claims she may have made.
The WCJ systematically addressed each of Martco's allegations of Ms. Metoyer's false statements. As for her failure to disclose her employment with UPS, the WCJ found that she had disclosed her employment with SYSCO and gave authorization to Martco to obtain her employment records from them, knowing that the records would disclose her employment with UPS. Additionally, her UPS employment *557 lasted only three to four weeks during the holiday season. The WCJ also noted that, at the time of this employment, Martco had already converted her claim, from TTD to SEB, based on a basis of a ten dollar and seventy-five cent per hour job for a forty hour work week. As her employment at UPS was short term and paid her only eight dollars and fifty cents an hour, the WCJ found the temporary employment with UPS was inconsequential and did not affect her receipt of benefits. Therefore, any statement or omission of her employment at UPS in Ms. Metoyer's deposition was inconsequential and had no bearing on her receipt of SEB benefits from Martco.
Next, the WCJ addressed Martco's allegations that Ms. Metoyer failed to disclose that her duties at SYSCO routinely involved heavy lifting of seventy to one hundred pounds. The WCJ found that a thorough review of SYSCO's employment records reveal that, although she began as a shift supervisor working in the warehouse, she subsequently changed positions which reduced the amount of manual labor required and eventually her job duties consisted exclusively of clerical skills and computer work. The records show that she maintained this clerical position for over a year, corroborating her testimony.
Martco also argues that Ms. Metoyer failed to disclose an automobile accident which occurred on April 18, 2001. The WCJ noted, however, that the hospital records from that matter indicate that her only injury was a fractured sternum. There was no re-injury or aggravation of her preexisting back injury at all. Therefore, this omission was inconsequential.
The WCJ next addresses Martco's allegation that Ms. Metoyer failed to disclose a prior workers' compensation claim from 1992. The claim form from that incident indicates that she fell over a stool and injured her left lower leg. The WCJ noted that the record from that injury reflects no injury to her back or right leg; therefore, it has no impact on her claimed injuries from the Martco accident. Further, he observed that she freely discussed this prior claim in her testimony. He found this information immaterial to her current claim for workers' compensation benefits, and, therefore, any alleged failure to address it previously was inconsequential.
Martco also alleges that Ms. Metoyer failed to disclose a complaint of back pain following an automobile accident in 1995. The WCJ found it significant, however, that the records of the doctor, she saw following that accident, indicate that she saw the doctor on only one occasion. Therefore, that injury does not appear to be related to her current back problems. The WCJ supported his ruling with cases in which this court held that failure to disclose a prior back injury, which was not related to spinal disks, was inadvertent and inconsequential to a subsequent workers' compensation claim for spinal injury.[4]
Martco also claims that Ms. Metoyer suffered an on-the-job injury at SYSCO. It bases this allegation on the fact that she filed a short term disability claim form, following her termination, in which she indicates that she suffered an injury. Martco argues that this form indicates that the injury occurred at SYSCO. However, on the form, she indicated that she had suffered from a back injury and that she had previously lost work time for this injury. She also admitted on it that she was currently receiving workers' compensation *558 benefits. The WCJ found that all of the information contained on the form was, in fact, true but that the form, itself, was very confusing, and it was unclear whether she was claiming compensation for a back injury actually sustained during her employment with SYSCO or for her prior workplace injury at Martco. SYSCO's employment records are clear, however, that there is no report of an on-the-job injury sustained during her employment. Therefore, the WCJ found no false statement.
Finally, the WCJ addresses the social security records she prepared after she left SYSCO. The social security form indicates that her job duties at SYSCO included heavy lifting of cases of food from seventy to one hundred pounds. As previously noted, her original position with SYSCO was in the warehouse and did involve some heavy lifting. She testified that she was unable to continue this level of activity due to her prior back injury, and within a matter of weeks her position changed and became fully clerical in nature. SYSCO's employment records corroborate this. The WCJ held that, even if there were misstatements in Ms. Metoyer's claim for social security or her claim for short term disability, such misstatements or misinformation were not offered for the specific purpose of obtaining workers' compensation benefits.
We cannot find manifest error in the WCJ's determinations regarding these alleged false statements. Additionally, despite Martco's allegations to the contrary, our review of the record and trial transcript reveals no bias, on the WCJ's part against Martco during the course of this litigation.

SEB RATE
Martco argues that the WCJ did not establish a proper SEB rate. "The purpose of SEBs is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident."[5] Thus, the SEB rate is the difference between the claimant's average monthly wage before the injury and her monthly earning capacity after the injury.[6] The employer has the burden of proving any post-injury earning capacity.[7] The employer can meet this burden by showing that the employee is physically able to perform a certain job and that the job was offered or available to the employee in her or the employer's community or reasonable geographic region.[8]
Martco contends that the two positions Ms. Metoyer held in Florida, as well as a position Martco offered her in September 1999, prove job availability. However, the WCJ found that the position Martco offered did not fit within the work restrictions Ms. Metoyer's physicians prescribed. As to the jobs she held in Florida, her UPS employment was temporary in nature and insufficient to establish job availability which would discharge Martco's SEB obligation. While the position at SYSCO was a full time position, SYSCO terminated Ms. Metoyer because the injury she suffered at Martco prevented her from continuing in a warehouse position. Thus, Martco has not sufficiently discharged its burden of proving job availability.

*559 FELONY CONVICTION
Martco claims that the WCJ committed manifest error by failing to admit evidence of a felony conviction against Ms. Metoyer while she was living in Florida. The conviction involved a domestic incident with her husband. The WCJ found that any domestic issues were irrelevant to this workers' compensation matter.
We find no manifest error in the WCJ's refusal to admit evidence of the conviction. Such evidence, even if admitted, would not reduce or remove Martco's obligation to provide Ms. Metoyer workers' compensation benefits.

FAILURE TO AUTHORIZE MEDICAL TREATMENT
Martco contends that its failure to timely pay Ms. Metoyer's medical benefits does not subject it to penalties or attorney fees, as these claims were reasonably controverted. The WCJ awarded penalties and attorney fees for an unjustified delay in authorization for the following: treatment by a physician after Ms. Metoyer moved to Florida; treatment by an orthopedic surgeon and for an EMG following Dr. Richard's recommendation; and physical therapy following Dr. Montijo's recommendation. The WCJ also awarded penalties and attorney fees for Martco's failure to authorize the following: treatment by a urologist following Dr. Gulati's recommendation, as Dr. Collins records also supported the need for a urologist; treatment by a psychologist following Dr. Montijo's recommendation, as Dr. Richard's and Dr. James' records supported this recommendation; and failure to provide adequate vocation rehabilitation.
At least one physician, and in some instances two or three, supported each suggested treatment. Thus, we find no manifest error in the WCJ's determination that Martco failed to reasonably controvert the need for these treatments.

INDEMNITY BENEFITS
Additionally, the WCJ awarded penalties and attorney fees for the following indemnity benefit payments: late or insufficient payments for January 4, 1999 to January 10, 1999 and for June 26, 1999 to July 2, 1999; reducing Ms. Metoyer's benefits based upon the job Martco offered her; and taking credits on her SEB payments in August 2001 after SYSCO terminated her, based on the position Martco had offered her in November 1999.
Martco asserts that the trial court erred in awarding penalties and attorney fees concerning indemnity benefit payments because Ms. Metoyer's disputed claim form only asked for relief for Martco's failure to authorize medical treatments. However, the July 11, 2001 disputed claim form clearly indicates that in the category of bonafide dispute Ms. Metoyer indicated not only failure to authorize medical treatment but also "other," which specifically includes non-payment or incorrect payment of indemnity benefits. In addition to the disputed claim form, Ms. Metoyer's pre-trial statement unequivocally includes non-payment or incorrect payment of disability benefits in her list of issues to be litigated. Furthermore, Martco's own pretrial statement acknowledges that litigation of these compensation benefits may be an issue.
Accordingly, we proceed with a review of each award. We agree with the WCJ's penalty awards for reduction of SEB's and for SEB credits Martco took in August 2001, as the job Martco offered Ms. Metoyer did not comply with the work restrictions Dr. Collins placed on her. However, we must reverse the penalty and attorney fees awarded for Martco's payments for the periods in January, June, and July of 1999, as we find merit in Martco's exception of res judicata.

*560 EXCEPTION OF RES JUDICATA
Martco filed a Peremptory Exception of Res Judicata in this court concerning the WCJ's awards for incorrect and untimely payments in January, June, and July of 1999. Ms. Metoyer filed her first 1008 Disputed Claim for Compensation on January 22, 1999. The WCJ heard the matter on August 9, 1999. Thus, Martco urges that the August 1999 judgment bars her claims in the instant suit related to payments made in the January, June, and July 1999. We must agree.
Louisiana Revised Statute 23:1201(F) states, in pertinent part:
An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing.

(Emphasis added.)
Likewise, La.R.S. 23:1201(J) provides, in pertinent part:
[A]n award of such single attorney fee shall be res judicata as to any and all conduct for which penalties may be imposed under this Section which precedes the date of the hearing.

(Emphasis added.)
The January, June and July 1999 payments were claims which arose from conduct that preceded the August 9, 1999 hearing. Thus, La.R.S. 23:1201(F) and (J) preclude Ms. Metoyer from collecting penalties or attorney fees for those incorrect payments.
We recognize that the legislature added the relevant part of La.R.S. 23:1201(F) and La.R.S. 23:1201(J) in 2003. However, we apply them to the instant case because laws which merely clarify the meaning of a statute are interpretive and may apply retroactively.[9] The nature of workers' compensation proceedings require the WCJ to retain jurisdiction in order to continuously assess the employee's condition. Furthermore, because the WCJ's adjudication imposes an ongoing obligation on the employer, it retains jurisdiction to address continuous violations. Thus, these unique aspects of workers' compensation create confusion as to res judicata's application in workers' compensation proceedings.
However, notwithstanding the amendments, La.Code Civ.P. art. 425(A) requires a litigant to bring all claims simultaneously, if they arise out of a single transaction or occurrence. If the litigant fails to bring all such claims, res judicata precludes her from bringing them in a subsequent suit.[10] Therefore, even though the WCJ has jurisdiction to adjudicate the employer's ongoing violations, a violation that could have been raised in a prior proceeding, but was not, may not be raised in a future proceeding because it is barred by res judicata. Instead, all violations that occurred and could have been raised in a prior proceeding are subsumed in that judgment, whether raised or not. Neither Article 425 nor the res judicata rule provides an exemption for workers' compensation judgments.
The relevant amendments simply clarify that Article 425 and the res judicata rules apply to workers' compensation proceedings in the same manner they apply to all others. Therefore, they are interpretive.
Thus, the August 1999 hearing precludes any claims for Martco's conduct prior to that hearing. Accordingly, we reverse the award of penalties and attorney fees for *561 Martco's payments for the specified periods in January, June, and July of 1999.

MULTIPLE ATTORNEY FEES
Louisiana Revised Statute 23:1201(J) states, in pertinent part:
Notwithstanding the fact that more than one violation in this Section which provides for an award of attorney fees may be applicable, only one reasonable attorney fee may be awarded against the employer or insurer in connection with any hearing on the merits of any disputed claim filed pursuant to this Section.
(Emphasis added.)
In the instant case, the WCJ awarded a separate amount of attorney fees for each violation necessitating a penalty. However, La.R.S. 23:1201(J) dictates that only one reasonable attorney fee be awarded, notwithstanding that more than one violation is applicable.
Again, the legislature did not enact La.R.S. 23:1201(J) until 2003. However, it is interpretative and may apply retroactively. By allowing for the imposition of attorney fees, the legislature did not intend to abandon the jurisprudential factors that are traditionally considered in the amount of attorney fees awarded.
Specifically, our supreme court has already determined that it is the imposition of attorney fees, itself, not the amount, that serves to penalize the employer.[11] Accordingly, factors such as the employer's bad faith and the level of egregiousness of its actions may not be taken into account when setting attorney fees.[12] To impose an award of attorney fees along with each violation is an improper method which ignores the supreme court's directive. Namely, this method automatically increases the amount of attorney fees awarded in direct proportion to the number of violations. The ultimate result is to penalize the employer with the amount of fees rather than recognizing the imposition as the penalty.
Therefore, attorney fees should still be calculated using factors such as: the degree of skill and work involved in the case, the amount of the claim, the amount recovered, and the amount of time devoted to the case.[13] Thus, the legislature merely codified existing jurisprudence in La.R.S. 23:1201(J). Furthermore, a judge needs evidence of the above in order to properly assess and assign a fee.
We reverse the WCJ's award of $41,500.00 in attorney fees, remand to the trial court, and order it to consider evidence concerning these traditional jurisprudential factors in setting the amount of attorney fees.

COURT COSTS
In its final assignment of error, Martco argues that the WCJ erred in assessing all costs of the trial against it and urges us to reverse the judgment and cast costs against Ms. Metoyer. Because we have found no merit in most of Martco's assignments of error, we find no abuse of discretion in the trial court's decision to assess the trial costs against Martco.

MOTION FOR NEW TRIAL
Martco appeals the trial court's denial of its motion for a new trial. A new trial is warranted when the judgment appears clearly contrary to the law and evidence.[14] We have reversed those portions of the judgment contrary to the law. In all other respects, we find no *562 abuse of discretion in the trial court's judgment. Nor does a review of the record lead us to conclude that the trial court's denial of this motion resulted in a miscarriage of justice.

MS. METOYER'S ASSIGNMENTS OF ERROR
Ms. Metoyer claims that the WCJ erred in denying her penalties and attorney fees for Martco's failure to reimburse her for medication expenses from Eckerd's pharmacy. However, she failed to provide proof that she actually paid for the medications in question. Thus, we find no error in the trial court's refusal to award reimbursement.
She also requests an increase in the amount of attorney fees the WCJ awarded as well as additional attorney fees for handling this matter on appeal. Our decision to reverse the award of attorney fees and remand this matter pretermits a review of the amount of attorney fees the WCJ awarded. We grant $3,500.00 for the work done on appeal.

CONCLUSION
We reverse the $2,300.00 award of penalties for Martco's late or inadequate payments of benefits for periods in January, June, and July of 1999. We reverse the trial court's award of attorney fees, remand the matter and direct the trial court to calculate the amount of attorney fees in accordance with our opinion. In all other respects, we affirm the trial court's judgment. We grant Ms. Metoyer $3,500.00 in attorney fees for the work done on appeal, and assess all costs of the appeal to Martco.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.
SAUNDERS, J., dissents and assigns written reasons.
SAUNDERS, J., dissents and assigns written reasons.
I respectfully dissent. The conduct cited by the workers' compensation judge as grounds for multiple attorney fees awards occurred before the enactment of La.R.S. 23:1201(J) in 2003. In reversing the workers' compensation judge, the majority concludes that this enactment is "interpretative" and should be applied retroactively. I disagree.
In examining the distinguishing characteristics of substantive, procedural, and interpretative laws the supreme court has held that:
substantive laws are laws that impose new duties, obligations or responsibilities upon parties, or laws that establish new rules, rights and duties or change existing ones; procedural laws are those which prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws; and interpretative laws are those which clarify the meaning of a statute and are deemed to relate back to the time that the law was originally enacted. [Emphasis added].
Sawicki v. K/S Stavanger Prince, 01-0528, p. 8 (La.12/7/01), 802 So.2d 598, 603-04. Before La.R.S. 23:1201(J) was enacted, claimants had the right to receive an award of attorney fees for every instance in which an employer violated the statute. This right was extinguished when La.R.S. 23:1201(J) was enacted; therefore, that enactment is substantive because an existing right was changed. Because I believe this enactment is substantive and substantive enactments apply prospectively, the law as it existed at the time of Martco's violations should apply. Skipper v. Acadian Oaks Hosp., 00-67 (La.App. 3 Cir. 5/3/00), 762 So.2d 122.
*563 Multiple awards of attorney fees were allowable when this dispute arose. Accordingly, I do not believe the workers' compensation judge erred in ordering multiple awards for attorney fees based upon multiple violations of La.R.S. 23:1201 by Martco. Furthermore, I believe the workers' compensation judge's award of attorney fees was not an abuse of discretion. The workers compensation noted the sheer volume of documentary evidence presented in this matter and the large number of issues raised as the basis for the award. Additionally, the representation of Ms. Metoyer was undoubtedly made more burdensome by the fact that she resided in another state from the time the claim was filed until the hearing nearly two years later. Because of Mr. Flournoy's experience in workers' compensation matters and the time required by the many complex issues presented here, I believe the award of attorney fees was reasonable.

ON REHEARING
J. DAVID PAINTER, Judge.
This case comes before us pursuant to the Plaintiff's Petition for Rehearing regarding this court's rulings concerning the exception of res judicata and the award of multiple attorney's fees. Upon reconsideration, we find merit in the petition and grant a rehearing.

RES JUDICATA
Ms. Metoyer asserts that this court erred in granting Martco's exception of res judicata. We agree.
By its exception, Martco contends that Ms. Metoyer's claims for incorrect and untimely payments in January, June, and July 1999 are barred by res judicata because they were the subject of a judgment rendered in August 1999. Ms. Metoyer asserts that the Judgment of Dismissal rendered in August 1999 under docket number 99-0549 addressed only Martco's first untimely payment of benefits for the period from December 27, 1998 through January 3, 1999, and that other incorrect or untimely payments were not concluded by that judgment. She alleges that additional incorrect or untimely payments were made for the period of January 4, 1999 through January 10, 1999, which paid only five days compensation, and for June 26, 1999 through July 2, 1999, which was made six days late.
La.R.S.13:4231 provides with regard to res judicata that:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
The first circuit in Lee v. Twin Bros. Marine Corp., 03-2034, pp. 4-5 (La. *564 App. 1 Cir. 9/17/04), ___ So.2d ___, 2004 WL 2071713, explained the application of the doctrine of res judicata:
The purpose of res judicata is to promote judicial efficiency and final resolution of disputes by preventing needless relitigation. Avenue Plaza, L.L.C. v. Falgoust, 96-0173, p. 4 (La.7/2/96), 676 So.2d 1077, 1079. The burden of proof is upon the pleader to establish the essential facts to sustain the plea of res judicata. Diamond B. Const. Co. v. Dept. of Trans & Dev., 02-0573, p. 8 (La.App. 1st. Cir.2/14/03), 845 So.2d 429, 435. The doctrine of res judicata is stricti juris and should be rejected when doubt exists as to whether a party's substantive rights have actually been previously addressed and finally resolved. Domingue ex rel. Domingue v. Allied Discount Tire and Brake, Inc., XXXX-XXXX (La.App. 1st Cir.5/9/03), 849 So.2d 690, 695, writ denied, XXXX-XXXX (La.10/3/03), 855 So.2d 320. A final judgment has the authority of a thing adjudged only as to those issues presented in the pleadings and conclusively adjudicated by the court. Ins. Associates, Inc. v. Francis Camel Const., 95-1955, p. 3 (La.App. 1st Cir.5/10/96), 673 So.2d 687, 689. Identification of issues actually litigated shall be determined not solely from the pleadings but also by examining the entire record in the first suit. Ebey v. Harvill, 26,373, p. 3 (La.App. 2nd Cir.12/7/94), 647 So.2d 461, 464.
Further, as noted by this court in Prudhomme v. Iberville Insulations, 93-778, p. 4 (La.App. 3 Cir. 3/2/94), 633 So.2d 380, 382, the doctrine of res judicata must be applied to workers' compensation "in light of the rule that the Act must be construed liberally in favor of the employee."
Our review of the trial record of docket number 99-0549 convinces us that the only matters concluded by the judgments rendered under that docket number were Martco's first untimely payment of benefit for the period from December 27, 1998 through January 3, 1999 and the amount to be awarded in attorney's fees for that failure to pay timely. Accordingly, we find that the only issue barred by res judicata is the late payment of benefits for the period from December 27, 1998 through January 3, 1999. As a result, we reinstate the trial court's judgment awarding penalties and attorney's fees for the periods of January 4, 1999 through January 10, 1999 and June 26, 1999 through July 2, 1999.
Alternatively, Martco argues that even if we find that Ms. Metoyer's claims are not barred by res judicata, she improperly expanded the pleadings to include the claims for incorrect or untimely payments made for the periods of January 4, 1999 through January 10, 1999 and June 26, 1999 through July 2, 1999. Martco asserts that in answers to interrogatories Ms. Metoyer indicated that incorrect or untimely payments during 1999 were not at issue, that Ms. Metoyer was not given permission to amend her pleadings and that her 2001 disputed compensation claim form asserts only failure to authorize medical treatments as the basis for that claim. We find these arguments to be unfounded.
In Johnson v. Louisiana Container Co., 02-382 (La.App. 3 Cir. 10/2/02), 834 So.2d 1052, 1062, writ denied, 02-3099 (La.5/9/03), 843 So.2d 394, the employer asserted that the employees' benefit calculation dispute should be limited to the period given in answer to interrogatories. This court refused to limit the scope of the litigation to that period, stating: "[I]t is within the trial court's discretion to admit or disallow evidence subject to an objection based upon the scope of the issues and pleadings. Furthermore, it is within the *565 trial court's discretion to determine whether evidence is encompassed by the general issues raised in the pleadings." Id. at 1062 (citation omitted).
An examination of the record shows that Martco is incorrect in asserting that Ms. Metoyer's claim form advanced only a claim for failure to authorize medical treatments. The July 11, 2001 disputed claim form reveals that Ms. Metoyer indicated both failure to authorize medical treatment and "other," which specifically includes non-payment or incorrect payment of indemnity benefits. Additionally, in its pre-trial statement, Martco listed non-payment or incorrect payment of disability benefits among the issues to be litigated. Accordingly, Martco cannot claim that they were surprised or unduly burdened by Ms. Metoyer's claims of incorrect or untimely payments. We find no abuse of discretion in the admission of evidence with regard to these matters.

ATTORNEY'S FEES
The Plaintiff urges that this court was incorrect in finding that La.R.S. 23:1201(J) may be applied retroactively. We agree.
"In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." La.Civ.Code art. 6. The Louisiana Supreme Court in Sawicki v. K/S Stavanger Prince, 01-0528, p. 8 (La.12/7/01), 802 So.2d 598, 603, explained that:
[S]ubstantive laws are laws that impose new duties, obligations or responsibilities upon parties, or laws that establish new rules, rights and duties or change existing ones; procedural laws are those which prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws; and interpretative laws are those which clarify the meaning of a statute and are deemed to relate back to the time that the law was originally enacted.
La.R.S. 23:1201(J) changes existing rights. Therefore, we find that it is substantive. Additionally, this court has previously held that La.R.S. 23:1201(J) is a substantive addition to the statute and, therefore, does not apply retrospectively so as to deny multiple awards of attorney's fees to cases which occurred before it was passed. In Smith v. Roy O. Martin Lumber Co., 03-1441, pp. 12-13 (La.App. 3 Cir. 4/14/04), 871 So.2d 661, 670, writ denied, 04-1311 (La.9/24/04), 882 So.2d 1144, the court explained the interpretation of the provision:
The Louisiana Supreme Court in Fontenot v. Reddell Vidrine Water Dist., 02-439, 02-442, 02-478 (La.1/14/03), 836 So.2d 14, found La.R.S. 23:1201(F) provides multiple penalties and attorney fees for multiple violations of compensation and medical benefits claims.
The Legislature subsequently added subsection J to La.R.S. 23:1201, effective July 3, 2003, which provides in pertinent part as follows:
J. Notwithstanding the fact that more than one violation in this section which provides for an award of attorney fees may be applicable, only one reasonable attorney fee may be awarded against the employer or insurer in connection with any hearing on the merits of any disputed claim filed pursuant to this Section ...
Martco argues the addition of subsection J should be applied retroactively and only one attorney fee award is allowable. However, in Gay v. Georgia Pacific Corp., 32,653 (La.App. 2 Cir. 12/22/99), 754 So.2d 1101, it was held the *566 provisions of the statute in effect at the time of the withholding of benefits control the award of penalties and attorney fees. See also Skipper v. Acadian Oaks Hosp., 00-67 (La.App. 3 Cir. 5/3/00), 762 So.2d 122. Moreover, the enactment of Subsection J changes the law and thus has substantive effect. La.Civ.Code art. 6 provides that substantive laws apply prospectively only and cannot be given retroactive effect in the absence of contrary legislative expression. Since the denial of benefits and failure to pay medical expenses occurred prior to the enactment of subsection J, the WCJ did not err in making multiple awards of attorney fees.
Therefore, we find that La.R.S. 23:1201(J) has no effect on the awards of attorney's fees made in this case.
Martco has disputed the awards as unwarranted and excessive. The workers' compensation judge outlined his reasons for the awards made in his twenty-five pages of oral reasons for judgment. He has thoroughly explained the reasoning behind each award. In the light of the record herein, as well as the reasons given by the workers' compensation judge, we find that the court had a reasonable basis for concluding that the claim was not reasonably controverted. See Cormier v. Louisiana Southwest Scrap & Salvage, 04-321 (La.App. 3 Cir. 12/1/04), 888 So.2d 1117. Further, "[a] WCJ has great discretion in the award of attorney fees and penalties, and a decision concerning the award of attorney fees will not be disturbed absent an abuse of discretion." Harvey v. B E & K Const., 33,475, p. 3 (La.App. 2 Cir. 8/23/00), 770 So.2d 819, 822. "There is no requirement that the trial court hear evidence concerning the time spent or the hourly rates charged to make an award of attorney fees since the record will reflect much of the services rendered." Id. However, La.R.S. 23:1201(F) requires that awards of attorney's fees be reasonable. "[F]actors to be considered in imposition of attorney fees in workers' compensation cases include the degree of skill and work involved in the case, the amount of the claim, the amount recovered, and the amount of time devoted to the case." Id. The record herein numbers seven volumes and shows evidence of the intensely contested claim before the court from January 1999 through the present. The trial court noted that it reviewed over ten thousand pages of documents in connection with the claim. The documents of record show a high degree of skill and a large amount of work devoted to this case by Plaintiff's counsel. Plaintiff's attorney has been successful in urging most of the large number of complex claims made and in making a substantial recovery on the part of his client, in the face of considerable opposition from the employer. We find the award of attorney's fees, as outlined in the reasons for judgment to be justified and reasonable. Therefore, we reinstate the trial court's award of attorney's fees.

CONCLUSION
We grant the application for rehearing and reinstate the trial court's judgment awarding penalties and attorney's fees for the periods of January 4, 1999 through January 10, 1999 and June 26, 1999 through July 2, 1999 and its award of attorney's fees.
REHEARING GRANTED; JUDGMENT REINSTATED IN PART.
AMY, J., dissents and assigns reasons.
SULLIVAN J., dissents from the reinstatement of the award of attorney fees, subscribing to this court's analysis of that issue on original hearing.
AMY, J., dissenting.
I respectfully dissent from the majority opinion. With regard to the res judicata *567 issue, I find no error in this court's original decision to maintain the exception. Insofar as they are relevant to the question of res judicata, La.R.S. 23:1201(F) and (J) were enacted subsequent to the conduct for which penalties and attorney's fees were awarded. However, La.R.S. 13:4231 was in effect at the time of the conduct at issue. Subsection (1) of that statute indicates that "all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment." See also La.Code Civ.P. art. 425(A).
In Jackson v. Iberia Parish Gov't, 98-1810, p. 9 (La.4/16/99), 732 So.2d 517, 524, the Louisiana Supreme Court discussed the application of La.R.S. 13:4231 in the context of a workers' compensation suit, noting that "inherent in the concept of res judicata is the principle that a party had the opportunity to raise a claim in the first adjudication, but failed to do so." Furthermore, I find it significant that the claims for penalties and attorney's fees are not ones over which the workers' compensation judge was required to exercise continuing jurisdiction due to the claimant's disability having changed. See La.R.S. 23:1310.8; Jackson, 732 So.2d 517. Rather, the claims were ones that could have been raised at the first hearing on the matter. Accordingly, I find that the exception of res judicata was properly maintained.
With regard to the attorney's fees, I conclude that the amendment to La.R.S. 23:1201(J) is interpretive in nature and, therefore, must be applied retroactively. In Fontenot v. Reddell Vidrine Water Dist., 02-0439 (La.1/14/03), 836 So.2d 14, the Louisiana Supreme Court interpreted the language of La.R.S. 23:1201(F) to permit the award of multiple penalties. The interpretation of the language in Subsection (F) has been found to permit the award of multiple attorney's fees under the same subsection. See Leonard v. James Indus. Constructors, 03-0040 (La.App. 1 Cir. 5/14/04), 879 So.2d 724, writ denied, 04-1447 (La.9/24/04), 882 So.2d 1139; Smith v. Roy O. Martin Lumber Co., 03-1441 (La.App. 3 Cir. 4/14/04), 871 So.2d 661, writ denied, 04-1311 (La.9/24/04), 882 So.2d 1144.
In my opinion, the enactment of Subsection J, which now clearly permits the recovery of only a single award for attorney's fees, is correctly viewed as interpretive. Therefore, it must be applied retroactively. I reach this conclusion as the amendment to the statute became effective in August 2003, only months after the supreme court's decision in Fontenot, which was released in January 2003.
In St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809 (La.1992), the Louisiana Supreme Court considered legislation enacted subsequent to supreme court decisions interpreting original legislation in a contrary way. Although subsequently enacted legislation was argued to be interpretive and in response to what was alleged to have been erroneous jurisprudence, the supreme court found no merit in the argument, concluding that the subsequent legislation in that case was substantive in nature. In doing so, the supreme court explained that among the considerations leading it to find that the amended legislation was a substantive change in the law, was its determination that the amendment was not a prompt response to the jurisprudence at issue. Instead, the amendment came two years after the final supreme court decision on the subject. Furthermore, the jurisprudence had been developing for a period of ten years. The supreme court also noted that the legislation did not overturn a single decision of the court, but instead, overturned *568 a developing line of cases and thus, could be considered to have overturned settled law.
Although the supreme court in St. Paul determined that the legislation before it was substantive in nature, in my opinion, the reasoning of St. Paul, applied to the facts of this case, indicates that the legislation now under consideration is interpretive. In the present case, Fontenot was rendered in January 2003 and the legislation at issue approved in July 2003. It became effective in August 2003.
Furthermore, insofar as the award of multiple attorney's fees is concerned, Fontenot was not at the end of a developing line of jurisprudence so as to constitute settled law on the topic of whether multiple attorney's fees were possible. In the face of these indicators, it is my view that the legislation was enacted in response to Fontenot and was intended to establish the legislature's original intentions. Accordingly, in my opinion, the enactment of La.R.S. 23:1201(J) is properly viewed as interpretive and must, therefore, be given retroactive application.
For these reasons, I respectfully dissent.
NOTES
[1] Smith v. La. Dep't of Corrs., 93-1305 (La.2/28/94), 633 So.2d 129.
[2] Campo v. Correa, 01-2707 (La.6/21/02), 828 So.2d 502.
[3] 94-2708 (La.9/5/95), 660 So.2d 7.
[4] See Greenhill Nursing Home v. Ferguson, 01-459 (La.App. 3 Cir. 10/3/01), 796 So.2d 881, writ denied, 01-2976 (La.1/25/02), 807 So.2d 843; Fuselier v. Kaough & Associates, 00-1750 (La.App. 3 Cir. 5/2/01), 784 So.2d 830.
[5] Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52, 55 (La.1993).
[6] Short v. Allen Johnson Builders, Inc., 02-1454 (La.App. 3 Cir. 5/14/03), 847 So.2d 690, writs denied, 03-1743, 04-1750 (La.10/10/03), 855 So.2d 344.
[7] Id.
[8] Id.
[9] Huddleston v. Farmers-Merchants Bank & Trust Co., 00-640 (La.App. 3 Cir. 11/02/00), 772 So.2d 356.
[10] Williams v. City of Marksville, 02-1130 (La.App. 3 Cir. 3/5/03), 839 So.2d 1129.
[11] Langely v. Petro Star Corp. of La., 01-0198 (La.6/29/01), 792 So.2d 721.
[12] Id.
[13] Id.
[14] La.Code Civ.P. art.1972.