# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 04-1193

**SAMUEL A. DAENEN**

**VERSUS**

**THE CAJUN LANDING RESTAURANT, ET AL.**

\*\*\*\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION
PARISH OF RAPIDES, DOCKET NO. 03-02057
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**SYLVIA R. COOKS**
**JUDGE**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and J. David Painter, Judges.

**REVERSED IN PART AND AFFIRMED IN PART.**

Jay A. Pucheu
Attorney at Law
P.O. Box 310
Marksville, Louisiana 71351
(318) 253-5080
COUNSEL FOR PLAINTIFF/APPELLEE:
    Samuel A. Daenen

Lewis O. Lauve, Jr.
Attorney at Law
P.O. Box 307
Alexandria, Louisiana 71309-0307
(318) 449-1937
COUNSEL FOR DEFENDANTS/APPELLANTS:
    The Cajun Landing Restaurant and
    The Louisiana Restaurant Association

**COOKS, Judge.**

## STATEMENT OF THE CASE

The Plaintiff, Samuel Daenen, was employed as head chef by The Cajun Landing Restaurant (Cajun Landing) in Alexandria. On February 2, 1999, he was moving a cart loaded with foodstuffs. While he was negotiating a right turn, the cart began to tip over. Mr. Daenen tried to get under the cart to prevent it from turning over. As he tried to hold the cart up, his right foot slipped causing him to twist his back. He fell to the ground and the cart fell on top of his lower body and legs. He reported the accident to his employer's kitchen manager.

Cajun Landing began paying TTD benefits in the amount of $198.38 which it calculated based on an average weekly wage of $297.55. Benefits of $198.38 were paid weekly from February 2, 1999 through November 30, 2002. On December 1, 2002, benefits were reduced when Mr. Daenen was released for light-duty work and vocational rehabilitation was conducted. Mr. Daenen received reduced benefits from December 1, 2002 through January 31, 2003. Thereafter SEB were terminated based on a labor market survey.

On March 20, 2003, Mr. Daenen filed a disputed claim for compensation seeking reinstatement of full indemnity benefits, penalties and attorney's fees. He subsequently filed an amended claim alleging Cajun Landing failed to pay him the correct rate of compensation.

*Decision of the Workers' Compensation Judge*

Trial on the merits was held on March 11, 2004. The workers' compensation judge (WCJ) rendered judgment in favor of Mr. Daenen fixing his average weekly wage at $300.00 (instead of $297.55) and his indemnity rate at $200.00 (instead of $198.38). The WCJ ordered the Defendant to pay Mr. Daenen all back indemnity

2

benefits based on the revised rate set forth in the judgment, together with interest. The WCJ further ordered the Defendant to pay SEB from November 2002 through the present and continuing based upon earnings, plus interest. Additionally, the WCJ ordered the Defendant to approve further evaluation and treatment with Dr. James Meek for urological complaints.

The WCJ also assessed the following: (1) $2,000.00 in penalties and $7,000.00 in attorney's fees for the Defendant's failure to accurately calculate the average weekly wage and indemnity benefit; (2) $2,000.00 in penalties and $4,000.00 in attorney's fees for the Defendant's failure to pay for Oxycontin prescribed by Dr. Steven Katz; (3) $4,000.00 attorney's fees for the arbitrary and capricious termination of SEB by the Defendant; and (4) $4,000.00 attorney's fees for the arbitrary and capricious termination of vocational rehabilitation benefits.

Cajun Landing filed this appeal. For the reasons assigned below, we reverse the decision of the WCJ awarding $2,000.00 penalties and $7,000.00 attorney's fees for miscalculation of Mr. Daenen's average weekly wage. In all other respects, we affirm the decision of the WCJ.

## LAW AND DISCUSSION

*Assignments of Error Numbers One, Two and Three*

Cajun Landing contends the WCJ erred in fixing Mr. Daenen's average weekly wage at $300.00 and his indemnity rate at $200.00. It contends there was no evidence in the record to support this finding. Alternatively, Cajun Landing contends it overpaid indemnity benefits as a result of undisclosed income from another job. Additionally, it contends the WCJ erred in awarding penalties and attorney's fees for the miscalculation of the average weekly wage and indemnity benefits.

We reject the Defendant's contention there was no evidence to support the

3

WCJ's finding that Mr. Daenen's hourly rate of pay was $7.50. Mr. Daenen testified he was a full-time employee with Cajun Landing and his hourly rate of pay was $7.50. There was no evidence presented by the employer to dispute this amount. Susan Brewer, the workers' compensation claims adjuster, testified Mr. Daenen's hourly wage was not obtained by the insurer prior to calculating his indemnity benefits. Instead, his benefits were calculated based on a wage statement provided by his employer which reflected his gross wages for four weeks prior to the accident and did not reflect his hourly rate. Ms. Brewer testified the average weekly wage was calculated based solely on this wage statement and no effort was made to obtain his hourly rate of pay from the employer at the time benefits were instituted. On April 24, 2003, it was brought to Ms. Brewer's attention that Mr. Daenen's hourly wage was $7.50 and therefore, the insurer's calculations were in error. She contacted Cajun Landing to verify this information and was informed Mr. Daenen's employment records had been destroyed. She testified: "[T]hey indicated to me that their records, that they were only required by law to keep their records, employment records, for three years after – I think it was three years after a person no longer worked for them. And so their complete personnel file had been destroyed."

Under La.R.S. 23:1021(12)(a)(i) if an employee is paid on an hourly basis and is employed for forty hours a week or more, his hourly wage rate is multiplied by the average actual hours worked in the four full weeks preceding the date of the accident, or forty hours, whichever is greater. We find sufficient evidence in the record, Mr. Daenen's weekly wage was $300.00.

Cajun Landing asserts it made an overpayment of benefits because at the time Mr. Daenen was receiving TTD he was making $68.00 a month. It is undisputed Mr. Daenen was earning $68.00 a month working for Data Bank, USA. He had been

4

working for this company for the past twelve or thirteen years concurrent with his employment with Cajun Landing. He testified once a month he audited soft drink invoices for a convenience store and reported the information on stroke sheets. He then sent the stroke sheets to the company in Fort Wayne, Indiana. Mr. Daenen made no claim for loss of income from this job as a result of the accident with his full-time employer, Cajun Landing. However, he testified he reported the income to the insurer. The following exchange occurred at trial concerning this issue:

Q. And did you ever advise LRA that you were receiving that money each month while you were receiving the benefits?

A. I was told, whether it be wrong or right – because I inquired about some other employment that I had concurrent with Cajun Landing employment, and I was told that the workers' comp. carrier wasn't responsible for any other job that I had, so the loss of income from my other jobs was not covered. And I was told that, you know, I didn't need to worry about that.

Q. Okay. So the question was, did you ever advise LRA that you were receiving this income while you were also receiving indemnity benefits from them?

A. Yes, when she sent me the form to fill out, I put my wage amount on there.

Q. Okay. You're talking about November or December –

A. Whenever she started sending me wage reports, I recorded the information on the wage report.

We find merit in Cajun Landing's argument that Mr. Daenen should have been receiving SEB instead of TTD benefits. Louisiana Revised Statutes 23:1221(1)(b) provides, in relevant part:

For purposes of Subparagraph (1)(a) of this Paragraph, compensation for temporary disability *shall not be awarded* if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.

(Emphasis added.)

5

Mr. Daenen was earning $68.00 a month. Although this amount is nominal, under the clear wording of this provision he was not entitled to receive TTD. Instead, Mr. Daenen was entitled to receive SEB representing sixty-six and two-third percent of his total wages, which amount must include the $68.00 he was earning from Data Bank USA. Louisiana Revised Statutes 23:1221(3) provides, in relevant part:

> (a) For injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at the time of the injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed by multiplying his "wages" by fifty-two and then dividing the quotient by twelve.
>
> (b) For purposes of Subparagraph (3)(a), of this Paragraph, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including, but not limited to, earnings from odd-lot employment, sheltered employment, and employment while working in any pain.

In its brief, Cajun Landing states Mr. Daenen was earning $1,300.00 a month. Additionally, Mr. Daenen admits he was earning an additional $68.00 a month working for Data Bank, USA. Therefore, his total earnings were $1,368.00 and SEB should have been calculated using this figure. Cajun Landing is then entitled to a credit of $68.00. Based on this calculation, Cajun Landing overpaid Mr. Daenen for forty-five months when he was receiving TTD. We have calculated the amount of overpayment as follows:

| | |
|---|---|
| Average Monthly Wage (Cajun Landing) | $1,300.00 |
| Additional Income (Data Bank USA) | $   68.00 |
| Total Income | $1,368.00 |
| Multiplied by sixty-six and two-thirds | x .667 |
| Monthly SEB owed | $ 912.45 |
| Credit to Cajun Landing | $   68.00 |

6

| | |
|---|---|
| Monthly SEB owed after credit | $ 844.45 |
| Monthly indemnity paid | $ 859.60 |
| Over-payment each month | $ 15.15 |
| | |
| Total amount of overpayment for 45 weeks | $ 681.75 |

Cajun Landing is entitled to a credit against the amount of SEB awarded by the WCJ. We reverse the WCJ award of $2,000.00 in penalties and $7,000.00 in attorney's fees assessed against Cajun Landing for miscalculation of Mr. Daenen's average weekly wages.

## Assignment of Error Number Four

Cajun Landing contends the WCJ erred in awarding penalties and attorney's fees for failure to pay for Oxycontin which was prescribed by Mr. Daenen's pain management physician, Dr. Stephen Katz. Ms. Brewer testified she received the bill but did not have an itemized statement from Ray's Apothecary. She testified she received the bill, turned it over to the review company and made no further attempts to obtain an itemized statement from Ray's. The record indicates Oxycontin was prescribed by Dr. Katz as early as July 28, 1999. Ms. Brewer testified she was aware Mr. Daenen received a prescription for Oxycontin from Dr. Katz on December 4, 2002, and thereafter at one-month intervals. Although she received the bill in January 2003, she made no efforts to pay the bill. *Nuzum v. TCI Turner Corp.*, 02-1232 (La.App. 1 Cir. 3/28/03), 857 So.2d 520, held the payor of benefits has the obligation to make a consistent and concerted effort to obtain all necessary and appropriate information from the healthcare provider. The payor of benefits cannot abdicate this responsibility by delegating this task to a third party. Accordingly, we find no error in the WCJ's finding that the failure to pay for the Oxycontin was not reasonably controverted and in his award of $2000.00 in penalties and $4,000.00 in attorney's fees.

## Assignment of Error Number Five

Cajun Landing contends the WCJ erred when it ordered the insurer to authorize and provide further evaluation and treatment by Dr. James Meek, a urologist. The medical testimony indicates Mr. Daenen is suffering from leakage and incontinence which he never experienced prior to the accident. Although the medical testimony differs as to the cause of the problem, the two physicians, Dr. Meek and Dr. R. Ambiavagar, testified there was a possibility Mr. Daenen's urinary problems were related to the accident. Based on the medical testimony, the WCJ concluded: "Mr. Daenen has shown by a preponderance of the evidence that he is entitled to follow-up urologic care with Dr. Meek; that the temporal relationship of his incontinent problem shortly after the occurrence of this accident . . . does seem to indicate that it's a possibility temporally that it's related." When an employee proves that he had no symptoms before the accident but symptoms continuously manifested after the accident and there is either medical or circumstantial evidence indicating a reasonable possibility of a causal connection between the accident and the condition, the employee's work injury is presumed to have caused the condition. *See Hammond v. Fid. & Cas. Co. of N.Y.,* 419 So.2d 829 (La.1982). We find no error in the decision of the WCJ ordering the insurer to provide follow-up urinary care for Mr. Daenen. The WCJ did not award penalties and attorney's fees. Although the evidence preponderates toward a causal connection between Mr. Daenen's urological problems and the accident, the two physicians differ as to the cause of the problem. We find no error in the decision of the WCJ to decline an award of penalties and attorney's fees.

### *Assignment of Error Number Six*

Cajun Landing contends the WCJ erred in awarding attorney's fees for the termination of vocational rehabilitation and SEB. We have reviewed the record and agree with the findings of fact articulated by the WCJ.

Ms. Brewer testified Mr. Daenen was paid TTD benefits through November 2002. From December 2002 through January 2003, his indemnity benefits were reduced, and finally on February 1, 2003, his SEB were terminated based on a labor market survey conducted by the vocational rehabilitation counselor, Mary Adair. Ms. Adair testified based on the medical records, it was her understanding, Mr. Daenen would not be able to return to his former employment because the job was classified as medium work. She contends she identified ten jobs for Mr. Daenen. However, the record indicates only seven were within Mr. Daenen's physical capability. Additionally, Ms. Adair did not obtain medical authorization for the jobs until after they were presented to Mr. Daenen. The record also indicates Mr. Daenen applied for several jobs but was unable to secure employment.[1] Moreover, Ms. Adair was aware the potential jobs identified for Mr. Daenen paid less than ninety percent of his pre-injury wages and Mr. Daenen would be entitled to continuing SEB, yet the insurer terminated all SEB in February 2003. We affirm the decision of the WCJ awarding attorney's fees after finding the insurer was arbitrary and capricious in terminating Mr. Daenen's SEB at the end of January 2003 and discontinuing vocational rehabilitation.

*Awards of Attorney's Fees*

The WCJ awarded four separate attorney's fees totaling $19,000.00. The legislature enacted La.R.S. 23:1201(J) by 2003 La. Acts No. 1204 § 1, effective August 15, 2003. The new provision reads as follows:

> Notwithstanding the fact that more than one violation in this Section which provides for an award of attorney fees may be applicable, only one reasonable attorney fee may be awarded against the employer or insurer in connection with any hearing on the merits of any disputed claim filed pursuant to this Section, and an award of such single attorney fee shall be res judicata as to any and all conduct for which penalties may be

---

[1] The record indicates Mr. Daenen applied at Enterprise Rent-A-Car for the manager training position, at Southwest Petroleum Corporation for a service representative position, at Stirling Life Insurance Company, at Terry's Alarm and at Cox Communications for a representative job.

9

imposed under this Section which precedes the date of the hearing.

In this case, the denial of benefits occurred prior to the effective date of this provision. This court addressed the issue of whether La.R.S. 23:1201(J) applies retroactively to bar multiple awards of attorney's fees. In *Metoyer v. Roy O. Martin, Inc.*, 03-1540 (La.App. 3 Cir. 03/23/05), __So.2d.__, *on rehearing*, this court stated:

> La.R.S. 23:1201(J) changes existing rights. Therefore, we find that it is substantive. Additionally, this court has previously held that La.R.S. 23:1201(J) is a substantive addition to the statute and, therefore, does not apply retrospectively so as to deny multiple awards of attorney's fees to cases which occurred before it was passed.

*Id*. at __.

We find La.R.S. 23:1201(J) does not prohibit multiple awards of attorney's fees in this case. Mr. Daenen's counsel requests additional attorney's fees for work done on appeal. *See Johnson v. La. Container Co.*, 02-382 (La.App. 3 Cir. 10/2/02), 834 So.2d 1052, *writ denied*, 02-3099 (La. 5/9/03), 843 So.2d 394. We award attorney's fees of $2,500.00 for work done on appeal.

## DECREE

Based on the foregoing review of the record, we reverse the decision of the WCJ awarding $2,000.00 in penalties and $7,000.00 in attorney's fees for miscalculation of Mr. Daenen's average weekly wage. In all other respects, we affirm the decision of the WCJ. We award attorney's fees of $2,500.00 for work done on appeal. All costs of this appeal are assessed to The Cajun Landing Restaurant.

**REVERSED IN PART AND AFFIRMED IN PART.**